# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN THOMAS BENSON,

Petitioner-Appellee,

v

MARY PAT FOSTER, a/k/a PAT FOSTER,

Respondent-Appellant.

UNPUBLISHED
February 24, 2015

No. 315384
Allegan Circuit Court
LC No. 12-050051-PH

Before: BECKERING, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Respondent, Mary Pat Foster, appeals as of right the trial court's order denying his motion to terminate the personal protection order (PPO) issued against him and obtained by petitioner, John Thomas Benson. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case concerns a dispute between petitioner and respondent, who are neighbors on Mallard Drive in Fennville. Petitioner lives with John Kluessendorf, his partner, and respondent lives across the street. The friction between petitioner and respondent began in the fall of 2011 when petitioner and Kluessendorf placed trees, shrubs, and stakes on part of petitioner's property that abutted Mallard Drive; the area previously served as a drainage ditch. Respondent did not approve of the fact that petitioner filled in the drainage ditch and soon became upset with petitioner and Kluessendorf. This feud escalated as respondent took various actions, including driving his truck into the trees and/or stakes, shining floodlights into petitioner's home at night, and parking his truck in such a manner as to block petitioner's access to Mallard Road.

On May 2, 2012, petitioner filed a petition for an ex parte PPO against respondent. The petition alleged that respondent drove his truck onto petitioner's property, drove his truck at petitioner, ran over petitioner's stakes and trees multiple times, ran over petitioner's shrub and stakes with a snow blower, threatened petitioner verbally, shined floodlights into petitioner's home during the evening for weeks, blocked petitioner's only way of exiting Mallard Drive multiple times, and personally removed a survey stake from petitioner's property. The petition alleged that because of the floodlights that respondent aimed at their home for a period of approximately six weeks, petitioner and Kluessendorf were unable to sleep at night. In addition, the petition alleged that petitioner and Kluessendorf contacted a realtor about selling their home because of respondent's actions. On May 4, 2012, the trial court entered a yearlong ex parte

-1-

PPO against respondent.

Respondent moved to terminate the PPO, and the trial court denied the motion following an evidentiary hearing. The trial court found that respondent's consistent behavior in shining the lights, parking his truck, and driving over trees, stakes, and the shrub constituted a willful series of conduct that constituted stalking and stated that there was no doubt that petitioner felt harassed. It also found petitioner's allegations and testimony credible, and found that respondent's testimony lacked credibility in a number of areas.

## II. ISSUANCE AND CONTINUANCE OF THE PPO

Respondent argues that the trial court erred in issuing and continuing the PPO. "We review for an abuse of discretion a trial court's determination whether to issue a PPO because it is an injunctive order." *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008). We also review a decision regarding whether to terminate a PPO for an abuse of discretion. See *id*. at 329. "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Id*. at 325. "We review a trial court's findings of fact for clear error." *Id*.

## A. MOOTNESS

Initially, we note that the PPO at issue expired on May 4, 2013, but we decline to find that this issue is moot. "As a general rule, an appellate court will not decide moot issues." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *Id*. A PPO may be entered into the Law Enforcement Information Network (LEIN). See MCL 600.2950a(16) and (17). Although a PPO may expire, it may remain entered in the LEIN because there is no statutory provision for the removal of an expired PPO. However, if we were to vacate the PPO, the LEIN would be updated to reflect that the order has been rescinded, terminated, or modified. MCL 600.2950a(19) and (20). Thus, it is possible for this Court to provide some remedy, and the issue is not moot. See *B P 7*, 231 Mich App at 359.

## B. ISSUANCE OF THE PPO

Petitioner sought a PPO under MCL 600.2950a, which addresses the issuance of PPOs in nondomestic matters. See *Lamkin v Engram*, 295 Mich App 701, 706; 815 NW2d 793 (2012). Concerning the issuance of a PPO, MCL 600.2950a(1) provides, in pertinent part:

> an individual may petition the family division of circuit court to enter a personal protection order to restrain or enjoin an individual from engaging in conduct that is prohibited under section 411h, 411i, or 411s of the Michigan penal code, 1931 PA 328, MCL 750.411h, 750.411i, and 750.411s. Relief under this subsection shall not be granted unless the petition alleges facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code, 1931 PA 328, MCL 750.411h, 750.411i, and 750.411s.

The petitioner bears the burden of proof in establishing stalking (MCL 750.411h), aggravated stalking (MCL 750.411i), or posting messages through electronic medium without consent (MCL 750.411s). *Lamkin*, 295 Mich App at 706. Pertinent to this case, MCL 750.411h(1)(d) defines stalking as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." "Harassment" is defined in MCL 750.411h(1)(c) as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." As used in the definition of "harassment," "unconsented contact" is defined to mean "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." MCL 750.411h(1)(e). Unconsented contact includes, but is not limited to:

> (*i*) Following or appearing within the sight of that individual.

> (*ii*) Approaching or confronting that individual in a public place or on private property.

> (*iii*) Appearing at that individual's workplace or residence.

> (*iv*) Entering onto or remaining on property owned, leased, or occupied by that individual.

> (*v*) Contacting that individual by telephone.

> (*vi*) Sending mail or electronic communications to that individual.

> (*vii*) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual. [*Id*.]

Because the definition of stalking involves a "course of conduct," see MCL 750.411h(1)(a), "[t]here must be evidence of two or more acts of unconsented contact that caused the victim to suffer emotional distress and that would cause a reasonable person to suffer emotional distress." *Hayford*, 279 Mich App at 330, citing MCL 750.411h(1)(a). " 'Emotional distress' means significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." MCL 750.411h(1)(b).

> Pursuant to MCL 600.2950a(12), an ex parte PPO "shall not be issued"

> without written or oral notice to the individual enjoined or his or her attorney unless it clearly appears from specific facts shown by verified complaint, written motion, or affidavit that immediate and irreparable injury, loss, or damage will result from the delay required to effectuate notice or that the notice will precipitate adverse action before a personal protection order can be issued.

> Here, the trial court did not abuse its discretion in issuing the PPO against respondent.

The PPO petition alleged that respondent drove his truck onto petitioner's property, drove his truck at petitioner, ran over petitioner's stakes and trees multiple times, ran over petitioner's shrub and stakes with a snow blower, threatened petitioner verbally, shined floodlights into petitioner's home for weeks, blocked petitioner's only way of exiting Mallard Drive multiple times, and personally removed a survey stake from petitioner's property. The petition was supported by numerous police reports related to some of the alleged acts. Petitioner's PPO petition sufficiently contained evidence of two or more acts of "unconsented contact" because the alleged acts, minus respondent shining the floodlights and blocking access to Mallard Drive with his truck, constituted "[a]pproaching or confronting [petitioner] in a public place or on private property" and "[e]ntering onto or remaining on property owned, leased, or occupied by [petitioner]." MCL 750.411h(1)(a); MCL 750.411h(1)(e). Regarding respondent's acts of shining floodlights at petitioner and blocking access to Mallard Drive with his truck, these acts are not enumerated in MCL 750.411h(1)(e); however, the statute states that unconsented acts are "not limited to" those listed in the statute. MCL 750.411h(1)(e). The trial court did not clearly err in finding that the act of shining floodlights into someone's home in the middle of the night and the act of blocking access to the road in front of someone's house constitute "unconsented contact" in line with the other acts listed in the statute. MCL 750.411h(1)(e). Moreover, petitioner stated that he felt worried for his safety and that he began working with a realtor to find a new home. Petitioner felt emotionally drained and distressed. Petitioner stated that he was afraid to leave his home and was afraid to leave his dog home alone. This was sufficient to show that petitioner suffered from "emotional distress." MCL 750.411h(1)(b). Moreover, respondent's acts would cause a reasonable person to suffer emotional distress. MCL 750.411h(1)(a). Therefore, the trial court did not abuse its discretion in issuing the ex parte PPO against respondent. *Hayford*, 279 Mich App at 325.

## C. CONTINUANCE OF THE PPO

Respondent also argues that the trial court should have granted his motion to terminate the PPO. The trial court did not abuse its discretion by finding that petitioner established "justification for the continuance of [the] PPO[.]" *Id.* at 326. At the motion hearings, petitioner testified and described in more detail the events alleged in his petition. Petitioner also stated that he could not sleep while respondent shined floodlights into his house and that "it was hell." According to petitioner, he and Kluessendorf first attempted to block the light using cardboard, but the two eventually gave up and rented another house nearby in which to sleep. Moreover, a neighbor testified that she observed respondent digging around a stake on petitioner's property and observed floodlights shining into petitioner and Kluessendorf's home at 2:30 a.m. one morning. These acts, as well as those discussed above, constituted multiple acts of unconsented contact with petitioner that caused emotional distress. MCL 750.411h(1)(a). Thus, after considering the testimony at the hearings and after considering the PPO petition, the trial court did not clearly err in determining that respondent's acts constituted stalking, harassment, and unconsented contact that caused petitioner to suffer from emotional distress and did not abuse its discretion in denying respondent's motion to terminate the PPO. *Hayford*, 279 Mich App at 325.

Respondent nevertheless argues that petitioner was not credible and argues that the trial court should not have believed his testimony or the allegations in the petition; however "an appellate court may not weigh the evidence or the credibility of witnesses." *Brandt v Brandt*, 250 Mich App 68, 74; 645 NW2d 327 (2002). Respondent also contends that the trial court was

-4-

"confused" by the evidence. While the trial court did confuse two videotaped incidents as one, the trial court still articulated sufficient reasons to find that respondent committed multiple acts of stalking that caused petitioner to suffer from emotional distress. Therefore, even with the misstatement as to one fact, we decline to find that this confusion amounts to grounds for reversing the trial court's order. See MCR 2.613(A)(3) ("[A]n error in a ruling or order, or an error or defect in anything done or omitted by the court . . . is not ground for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.").

Respondent next argues that the trial court did not consider evidence of an alleged oral agreement pursuant to which respondent agreed to move his truck from blocking the road and petitioner agreed to move his stakes during one of their encounters. However, evidence of the alleged agreement was presented to the trial court. The agreement was referenced in a police complaint submitted with petitioner's PPO petition, and the trial court heard testimony about the agreement. Although the trial court did not expressly comment on the alleged agreement, it was not required to do so. See *LaFleche v Ybarra*, 242 Mich App 692, 700; 619 NW2d 738 (2000) (explaining that a trial court need not comment on every matter in evidence). Thus, nothing in the record establishes that the trial court failed to consider this evidence. Moreover, to the extent respondent is arguing that he had the right to run over and remove stakes because petitioner breached the agreement, respondent cites no case or authority in support of the position that he was entitled to self-help for a breach of the alleged agreement. And, even assuming respondent had a right to remove and run over stakes, his actions in verbally threatening petitioner, twice blocking the road with his truck, and shining the light in petitioner's house constituted a sufficient basis for the trial court to grant and continue the PPO.

Respondent also argues that petitioner merely sought the PPO to gain an advantage in a property dispute. Although "PPOs can be inappropriately utilized . . . to obtain some perceived advantage . . . we believe trial courts are well positioned to determine if a party is acting in such an inappropriate fashion." *Pickering v Pickering*, 253 Mich App 694, 702 n 3; 659 NW2d 649 (2002). Thus, the trial court was in the best position to determine the credibility of petitioner and his request for a PPO, and the trial court necessarily determined that petitioner's concerns were credible and were not merely used to gain an advantage in a property dispute based on its issuance and continuance of the PPO. *Id.*

## III. REMAINING CLAIMS

Defendant next raises arguments pertaining to due process and the first amendment. These issues were not raised before the trial court and are unpreserved. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386-387; 803 NW2d 698 (2010). Moreover, respondent abandoned these issues by failing to cite to any relevant authority supporting his position. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008). We could therefore decline to address these issues. Furthermore, to the extent we consider these issues, we find they do not entitle respondent to reversal.

Affirmed.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher