*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RENALD POWELL,

        Plaintiff-Cross-Appellant,

and

MONA POWELL, also known as MONA
LOCKETT,

        Intervening Plaintiff-Appellant,

v

FARM BUREAU INSURANCE COMPANY,

        Defendant-Appellee/Cross-Appellee.

UNPUBLISHED
May 14, 2020

No. 344004
Wayne Circuit Court
LC No. 17-006742-CK

Before: MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

This case involved two lawsuits. Intervening plaintiff Mona Powell brought suit for automobile negligence. Plaintiff, Renald Powell, brought this action for a declaratory judgment to confirm his right to indemnification under defendant's no-fault insurance policy with Mona Powell. Defendant moved for summary disposition on the ground that there had been fraud in the underlying lawsuits. The trial court initially denied defendant's motion for summary disposition, but on reconsideration held that Renald was a participant in Mona's fraud to recover benefits under the policy, and therefore, defendant's obligation to indemnify Renald was "limited to the minimum amounts required by Michigan's Financial Responsibility Act, MCL 257.520, and MCL 500.3009." Mona now appeals, and Renald cross-appeals, as of right. This appeal is being decided without oral argument pursuant to MCR 7.214(E)(1). We affirm.

## I. FACTS AND PROCEEDINGS

Intervening plaintiff Mona Powell was the owner of a business, Momo's Transport, that she started to purportedly provide nonemergency medical transportation. Momo's Transport never

conducted business of any sort. In August 2014, Mona and plaintiff Renald Powell purchased a business no-fault automobile insurance policy for Momo's Transport from defendant. The policy insured a Chrysler 300 and one other vehicle. The policy included liability coverage with a limit of $1,000,000. On November 28, 2014, Renald was driving the Chrysler vehicle with Mona as a passenger. A vehicle driven by Kristal Scott struck the side of the Chrysler. After the accident, Mona was treated at a hospital. In the months that followed, Mona received treatment from her primary care physician and the Michigan Brain and Spine Institute. She was referred for physical therapy. She submitted claims to defendant for personal injury protection (PIP) benefits, including medical benefits, replacement services, and 24-hour attendant care provided by Shanique Hodge, Jimmie Ford, and Renald's son, Loren Miller.

Defendant initially paid Mona's claims for PIP benefits, but eventually discontinued payment of benefits. Mona brought an action against defendant, Renald, and Scott, seeking recovery of first-party PIP benefits from defendant, and asserting third-party negligence claims against Renald and Scott. In that action, the trial court granted defendant's motion for summary disposition of Mona's first-party claims on the basis of its determination that she submitted fraudulent claims for attendant care benefits, thereby voiding coverage under the policy. The court denied a countermotion for summary disposition filed by Renald, thereby allowing plaintiff's negligence claim against Renald to proceed.

Afterward, defendant notified Renald that, on the basis of fraud, it would not indemnify him for any liability he might incur against Mona. Renald then brought the instant action for declaratory judgment. He argued that defendant could not void indemnification coverage for him because he did not commit fraud and because Mona was not an insured within the meaning of the liability coverage section of defendant's policy. The trial court granted Mona's motion to intervene in Renald's action. Defendant brought a motion for summary disposition under MCR 2.116(C)(10), arguing that Renald also was a participant in Mona's fraudulent recovery of attendant care benefits, thereby voiding Renald's liability coverage. The trial court initially denied defendant's motion for summary disposition, but on reconsideration agreed that there was no genuine issue of material fact that Renald also was a participant in Mona's fraud, thereby entitling defendant to void liability coverage with respect to Renald beyond the statutory minimum requirement of $20,000 per person.[1] Mona and Renald both appeal that decision.

II. ANALYSIS

A. STANDARD OF REVIEW

"We review a trial court's decision on a motion for reconsideration for an abuse of discretion." *Woods v SLB Prop Mgt*, LLC, 277 Mich App 622, 629; 750 NW2d 228 (2008). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008). "An error of law necessarily constitutes an abuse of discretion." *Denton v Dep't of Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016).

---

[1] Defendant does not challenge this aspect of the trial court's ruling.

"A party bringing a motion for reconsideration must establish that (1) the trial court made a palpable error and (2) a different disposition would result from correction of the error. Palpable is defined as [e]asily perceptible, plain, obvious, readily visible, noticeable, patent, distinct, manifest." *Luckow v Luckow*, 291 Mich App 417, 426; 805 NW2d 453 (2011) (citation and quotation marks omitted; alteration in original).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

The moving party has the initial burden to support its claim with documentary evidence, but once the moving party has met this burden, the burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists. *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005). Additionally, if the moving party asserts that the nonmovant lacks evidence to support an essential element of one of his or her claims, the burden shifts to the nonmovant to present such evidence. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). Finally, issues concerning the interpretation of an insurance policy, including whether contract language is ambiguous, are also reviewed de novo. *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 713-714; 706 NW2d 426 (2005).

## B. PROOF OF FRAUD

Mona and Renald argue that the trial court erred by finding that there was no genuine issue of fact that they perpetrated fraud against defendant for purposes of obtaining PIP benefits.

Preliminarily, although Mona argues that the trial court erred by finding in the underlying action that she was a party to fraud, the trial court decided the issue of fraud in that action only in the context of determining Mona's entitlement to first-party PIP benefits, which is not an issue in this case. Defendant submitted the same evidence in this case that it previously submitted in the underlying case, in support of its argument that Mona submitted fraudulent claims for attendant care benefits. In addition to the evidence submitted regarding the first party claim, defendant submitted additional evidence in support of its argument that Renald also was a participant in that

fraud, which, defendant argued, voided Renald's claim for liability coverage.[2] The trial court relied on both sets of evidence to independently find in this case that there was no genuine issue of material fact regarding Mona's fraud and Renald's participation in that fraud.

The trial court found that video surveillance evidence submitted by defendant showed that Mona's claims for attendant care benefits were fraudulent because the evidence showed that care providers did not arrive at Mona's house on several days on which she claimed they provided attendant care. Mona and Renald argue that a genuine issue of material fact exists regarding whether the attendant care claims were fraudulent because Hodge submitted an affidavit in which she explained why she was not seen on the video, and still photographs showed the existence of an entrance not captured by defendant's cameras. But these photographs were not submitted below, and enlargement of the record on appeal is not permitted. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 474 n 6; 776 NW2d 398 (2009). Thus, we decline to consider the untimely photographic evidence.

The trial court determined that Hodge's affidavit did not establish a question of fact because it was "blatantly" contradicted by the video evidence. In *Scott v Harris*, 550 US 372, 380; 127 S Ct 1769; 167 L Ed 2d 686 (2007), the United States Supreme Court considered summary disposition under the Federal Rules of Civil Procedure and held "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." "When interpreting the Michigan Court Rules, a court may consider for its persuasive value federal precedent interpreting a similar federal rule." *Nowacki v Dept of Corrections*, 319 Mich App 144, 150 n 4; 900 NW2d 154 (2017). We agree with the analysis in *Scott* and choose to adopt it here.

In *Scott*, the plaintiff claimed that the defendant police officer used excessive force when he terminated the plaintiff's flight from the police by pushing the plaintiff's vehicle with the push bumper of the police vehicle. *Id*. at 375. The Supreme Court concluded that there was no genuine issue of material fact because the police video of the incident "quite clearly contradicted" the plaintiff's version of events. *Id*. at 378. In contrast to the plaintiff's testimony that he was not posing any risk of harm to motorists or pedestrians, the videotape showed the plaintiff's vehicle "racing down narrow, two-lane roads . . . at speeds that are shockingly fast," swerving around other cars, crossing the double-yellow line, and running red lights. *Id*. at 379-380. Because the video evidence so thoroughly discredited the plaintiff's version of events, the Supreme Court held that there was no dispute of material fact and that "no reasonable jury could believe" the plaintiff's version of events. *Id*. at 381-381.

The video evidence in this case blatantly contradicts the attendant care records Mona and Renald profess are accurate. The videos clearly show the front of the Powell house, the driveway,

---

[2] Under the Liability Coverage section of defendant's policy, an "insured" is defined as anyone with a valid driver's license who is using a covered auto with permission. The parties do not dispute that Renald had a valid driver's license and was permitted to drive of the Chrysler vehicle at the time of the accident.

and the yard facing Outer Drive. Significantly, while the side entrance to the house facing Outer Drive is not visible from the video footage, the entire yard on that side of the house is visible. Thus, the only way for an individual to access the Powell house without being visible on the surveillance videos would have been to climb over hedges and sneak through the yards of the Powells' neighbors. There is no evidence that Hodge accessed the Powell house in such a way. Rather, Hodge averred that

> to enter Mona Powell's home, [she] would be dropped off on the Outer Drive side of [the Powell home] and gain entry to the property thru [sic] the side/back door that was part of a wooden fence. [She] would then gain entry to the backyard and enter the home thru [sic] the "sun room."

Furthermore,

> to leave Mona Powell's home, [Hodge] would exit the home on the Outer Drive side thru [sic] the sun room into the backyard and leave the property thru [sic] the side/back door that was part of a wooden gate and [she] would be picked up on Outer Drive.

But the video tells a different story. Rather than showing Hodge arriving at the Powell house as she described each day at 8:00 p.m. and leaving as she described at 8:00 a.m., no activity can be seen. The videos do not show any individual walking across the Powell's yard to their fence and no car is seen picking Hodge up or dropping her off. Based on the surveillance videos, we are compelled to find that the claims of Hodge, Mona, and Renald that she came to the Powell house to provide attendant care services to Mona every day are blatantly false.

But if this inconsistency alone was not enough, the videos also fail to show Ford's supposedly frequent visits to the Powell house. Neither Mona nor Renald have offered any explanation for the absence of a video record showing Renald's alleged morning departures to pick up Ford, Renald's return to the house with Ford, or Renald and Ford's departure for work. This absence is material because the video shows Renald and other persons leaving and entering the house through the front door, and using the garages and driveway to get in and out of their vehicles. There is no evidence that the Powells used the portion of their property adjacent to Outer Drive when parking or driving to or from the house. Given the video evidence and the absence of any explanation of Ford's nonappearance, there is no genuine issue of material fact that Ford and Hodge did not provide attendant care to Mona on the dates of the surveillance, contrary to the attendant care records, and contrary to the deposition testimony of Mona and Renald.

There also is no question of fact that Renald participated in Mona's fraud. Defendant argues that Mona falsely represented that she was insuring vehicles to be used in a transportation business in order to obtain the $1,000,000 liability limit. Renald allegedly supported this scheme by signing the application. The only reasonable inference concerning Momo's Transport is that the company was a fiction. Mona's testimony that she intended to start the business "[e]ventually," which was not supported by any evidence of activity since the corporation was registered in 2011, does not establish a question of fact to counter this inference. Additionally, Renald's testimony regarding the attendant care Ford and Hodge allegedly provided for Mona establishes his collusion in Mona's false representations of attendant care. Renald made these statements after defendant

terminated Mona's PIP coverage for fraud, with the apparent purpose of affirming the attendant log to bolster Mona's first-party claim for no-fault benefits.

Renald also argues that defendant failed to prove the elements of intentional fraud. This Court has stated the requirements for proving fraud in an insurance claim as follows:

> To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [*Bahri v IDS Property Cas Ins Co*, 308 Mich App 420, 424-425; 864 NW2d 609 (2014) (citation omitted).]

Renald argues that the fourth element is not satisfied because if he made false representations, it was not to deceive defendant, but to ensure that Mona received payment for the attendant care she needed 24 hours a day, seven days a week. Renald offered the explanation that he and Miller provided attendant care when Ford and Hodge needed to adjust their schedules. But Mona's attendant care claims alleged that the attendant care was provided by Ford; and Renald claimed that he was the person who transported Ford to and from the Powell home to provide Mona with attendant care and that Ford did not miss a single day of providing attendant care. The surveillance videos establish that there is no genuine issue of material fact that Ford failed to appear on several days. Similarly, as stated earlier, the surveillance videos also establish that the claims that Hodge provided attendant care to Mona are false.

The trial court did not abuse its discretion in finding that it palpably erred when it initially denied defendant's motion for summary disposition by not finding that Renald committed fraud. The video clearly shows that the claims that Hodge and Ford provided attendant care to Mona are false. As such, the trial court's error was plain, obvious, and readily visible. See *Luckow*, 291 Mich App at 426. Consequently, the trial court's determination that Renald committed insurance fraud by attempting to support Mona's attendant care claims was certainly within the range of principled outcomes. See *Hayford*, 279 Mich App at 325. Because the trial court did not err by finding that Renald participated in Mona's fraud we need not consider the remaining arguments of Mona and Renald.

## III. RENALD'S BRIEF

Finally, we are compelled to comment on what appear to be misrepresentations in the brief filed by Renald's appellate attorney, Melissa Stewart. In her brief, Stewart claimed she attached 16 "video stills" of defendant's surveillance video to her brief on appeal. Specifically, Stewart asserted that the surveillance video "conclusively establishes that the vantage point from [which] the surveillance was taken was located directly in front of the Powells' home, which gave the investigator and/or video camera a clear view of the Powells' front door and garage door only." But Stewart's video stills and her statement about what could be seen on the surveillance video were not accurate. As discussed earlier, the surveillance videos clearly show the front of the Powell house, the driveway, and the yard facing Outer Drive; much more was visible than the

"front door and garage door only." Thus, for example, it is quite clear that if someone had been dropped-off on Outer Drive, and used the door at the far end of the house from where the video camera was located, as Renald argues on appeal, then the car, the drop-off, and someone walking toward the house would have been visible from the original video. Yet, Stewart cropped *all 16* video stills in an apparent attempt to mislead us regarding what was actually shown in the surveillance videos; significantly, her brief never makes reference to the fact that the videos were cropped. Reading the brief, one could easily assume that each of the "video stills" was simply a single frame, without more, extracted from the video. Even a casual observation of the "video stills" shows that is not the case, particularly when combined with the text of the brief describing alleged limitations on what the video surveillance shows. In fact, the limitations on what the video surveillance shows in the "video stills" arose only because those stills were cropped, and relevant portions removed. We are concerned that this was an attempt to mislead us, particularly given that all 16 video stills were cropped, which created the limitations we have discussed. In light of these facts we could easily conclude that the decision to attach the cropped video stills was not a mistake, which of course would be unacceptable. Nonetheless, we hope that these errors were due to technical inexpertise or lack of experience, and that such actions or mistakes will be avoided in the future. We commend defendant's efforts to bring the inaccuracies of the video stills to our attention, which served to prevent the inaccuracies from negatively affecting our decision.

## IV. CONCLUSION

Affirmed.

/s/ Christopher M. Murray
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel