HAYFORD v HAYFORD

Docket No. 276176. Submitted June 4, 2008, at Detroit. Decided June 10, 2008, at 9:00 a.m.

Dirk Hayford petitioned the Cass Circuit Court, Family Division, for a personal protection order (PPO) against his father, Mark Hayford. The court, Susan L. Dobrich, J., issued the PPO and subsequently continued it. The respondent appealed, seeking a *nunc pro tunc* order declaring the PPO invalid.

The Court of Appeals *held*:

1. The PPO did not impermissibly modify the custody of respondent's son. The respondent argued that the trial court could only modify custody under the Child Custody Act, MCL 722.21 *et seq*. The petitioner was 18 years old when he sought the PPO, however, so the Child Custody Act did not apply. While the Support and Parenting Time Enforcement Act, MCL 552.601 *et seq*., allows a court to order child support until the child is 19 years and 6 months old if the child is still in high school, the Child Custody Act contains no similar provision allowing custody orders or modifications after the child reaches the age of 18. The trial court did not abuse its discretion by issuing the PPO.

2. The record showed that the respondent had engaged in sufficient acts of harassment to justify issuing the PPO. The trial court's findings on the issues of harassment and emotional distress were not clearly erroneous.

3. Conduct that is constitutionally protected or serves a legitimate purpose is not "unconsented contact," as that term is defined in the stalking statute, MCL 750.411h, and thus cannot amount to harassment. Even if the respondent had a partially legitimate motive for contacting the petitioner—obtaining medical information about the petitioner—the trial court was entitled to conclude from the evidence that the respondent was not acting for a legitimate purpose.

Affirmed.

*Laurie S. Longo* for the respondent.

Before: WHITBECK, P.J., and O'CONNELL and KELLY, JJ.

PER CURIAM. Respondent Mark Hayford appeals as of right the trial court's decision to issue and continue a personal protection order (PPO) against him at the request of petitioner Dirk Hayford, his son, who was 18 years of age at the time. We affirm.

In November 2006, petitioner, a high school senior, was diagnosed with a potentially cancerous tumor that required surgery. Respondent was contacted for insurance purposes. Petitioner's parents were divorced, and the divorce judgment stipulated that respondent was required to support petitioner and provide medical care until he graduated from high school. Petitioner turned 18 on December 5, 2006.

Although the PPO has been terminated since the filing of this appeal, this appeal is not moot. Before the court issued the PPO, respondent earned a living building rifles and other firearms. Because entry of a PPO may affect eligibility for a federal firearms license, respondent may stand to permanently lose his license and livelihood. Respondent maintains that the PPO should never have been issued and seeks a *nunc pro tunc* order declaring it invalid.

We review for an abuse of discretion a trial court's determination whether to issue a PPO because it is an injunctive order. *Pickering v Pickering*, 253 Mich App 694, 700-701; 659 NW2d 649 (2002); MCL 600.2950(30)(c). An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). We review a trial court's findings of fact for clear error. *Sweebe v Sweebe*, 474 Mich 151, 154; 712 NW2d 708 (2006). We review de novo questions of statutory interpretation. *State Farm*

*Fire & Cas Co v Corby Energy Services, Inc*, 271 Mich App 480, 483; 722 NW2d 906 (2006).

Under MCL 600.2950(4), the trial court must issue a PPO if it finds that "there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in subsection (1)." The relevant acts include:

(a) Entering onto premises.

\* \* \*

(g) Interfering with petitioner at petitioner's place of employment or education or engaging in conduct that impairs petitioner's employment or educational relationship or environment.

\* \* \*

(i) Engaging in conduct that is prohibited under section 411h or 411i of the Michigan penal code, 1931 PA 328, MCL 750.411h and 750.411i.

(j) Any other specific act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence. [MCL 600.2950(1).]

The petitioner bears the burden of establishing reasonable cause for issuance of a PPO, *Kampf v Kampf*, 237 Mich App 377, 385-386; 603 NW2d 295 (1999), and of establishing a justification for the continuance of a PPO at a hearing on the respondent's motion to terminate the PPO, *Pickering, supra* at 699; MCR 3.310(B)(5). The trial court must consider the testimony, documents, and other evidence proffered and whether the respondent had previously engaged in the listed acts. MCL 600.2950(4).

Respondent argues that the PPO impermissibly modified the custody of his son and that the Child

Custody Act is the exclusive means through which the custody of his son may be modified. We disagree.

Because petitioner reached majority age before seeking the PPO, the Child Custody Act was inapplicable with respect to custody issues, although it was still applicable regarding child support. The Child Custody Act defines "child" as "minor child and children. Subject to section 5b of the support and parenting time enforcement act, 1982 PA 295, MCL 552.605b, for purposes of providing support, child includes a child and children who have reached 18 years of age." MCL 722.22(d). MCL 552.605b permits the entry of a child-support order in certain circumstances for a child who has reached 18 years of age. If the child is still in high school, MCL 552.605b provides that support may be ordered until he or she reaches 19 years and 6 months of age. Otherwise, as used in the Child Custody Act, "child" means a minor. While the Child Custody Act and the Support and Parenting Time Enforcement Act may provide an age extension for purposes of child support for a child who has reached majority age but has not graduated from high school, no extension exists for custody and visitation orders for a child who has reached majority age but is still in high school. Generally, once the family division of the circuit court exercises jurisdiction over a child and issues an order under the Child Custody Act, "the court's jurisdiction continues until the child is eighteen years old, MCL 722.27(1)(c)[.]" *Bowie v Arder*, 441 Mich 23, 53; 490 NW2d 568 (1992). As this Court explained in *Bert v Bert*, 154 Mich App 208, 211; 397 NW2d 270 (1986), "[j]urisdiction in divorce cases is purely statutory and every power exercised by the circuit court must have its source in a statute or it does not exist. . . . The divorce court's jurisdiction over child custody and visitation matters continues until the parties' children reach age eighteen."

Further, this Court has recognized that a PPO need not comply with the Child Custody Act under certain circumstances. In *Brandt v Brandt*, 250 Mich App 68, 70; 645 NW2d 327 (2002), this Court upheld the trial court's issuance of a PPO prohibiting the respondent from contacting his children without first holding a hearing to assess the "best interests of the child" under the Child Custody Act. The trial court was not making a custody determination when it issued a PPO, but "was simply issuing an emergency order, which was essentially an award of temporary custody of the children to petitioner, while granting respondent parenting time until the divorce proceeding was initiated so that the children might be protected from physical violence or emotional violence or both inflicted on them by respondent." *Id.* This Court further determined that the trial court in *Brandt* had authority under the PPO "catch-all" provision, MCL 600.2950(1)(j), to issue the PPO and prohibit contact. *Id.*

In the instant case, petitioner made it clear to respondent that he did not wish further contact. However, respondent's behavior demonstrated his inability to honor those wishes. He continued to place telephone calls to petitioner's cellular telephone and residence. Respondent attended a band concert at petitioner's school. He placed an advertisement in the newspaper with petitioner's name, the names of his family members, and other personal information, prompting co-workers of both petitioner and his mother to question them about the advertisement. Respondent contacted the office of petitioner's physician sufficient times to cause the doctor to be wary of treating petitioner, and respondent visited the hospital on the day of petitioner's surgery, causing him stress immediately beforehand. At most, the PPO merely temporarily modified respondent's custody rights in order to prevent contin-

ued harassment of petitioner and his family by respondent as petitioner dealt with his difficult medical condition. Moreover, contrary to respondent's assertion, the trial court did not, as part of the PPO, prohibit the exchange of medical information or modify the custody order. Accordingly, the trial court's decision to issue and continue a PPO against respondent fell within the range of principled outcomes. *Woodard, supra* at 557.

Respondent additionally argues that there were insufficient acts of harassment or stalking on record to support the PPO. MCL 600.2950(1)(i) prohibits stalking, which MCL 750.411h(1)(d) defines as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested."

"Harassment" is defined in MCL 750.411h(1)(c) as

conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.

"Unconsented contact" is defined as

any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:

(*i*) Following or appearing within the sight of that individual.

(*ii*) Approaching or confronting that individual in a public place or on private property.

(*iii*) Appearing at that individual's workplace or residence.

(*iv*) Entering onto or remaining on property owned, leased, or occupied by that individual.

(*v*) Contacting that individual by telephone.

(*vi*) Sending mail or electronic communications to that individual.

(*vii*) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual. [MCL 750.411h(1)(e).]

There must be evidence of two or more acts of unconsented contact that caused the victim to suffer emotional distress and that would cause a reasonable person to suffer emotional distress. MCL 750.411h(1)(a).

Against petitioner's wishes and despite the fact that he was facing a difficult health ordeal, respondent appeared at petitioner's high school and at the hospital, repeatedly attempted contact by means of petitioner's cellular and home telephones, contacted petitioner's treating physician at least three times, and placed an advertisement containing personal information about petitioner in the newspapers. Further, respondent also told petitioner that "I'll be everywhere you go and in your back pocket." The record shows that there were sufficient acts of harassment to justify the issuance of a PPO, and the trial court's finding that respondent's behavior was harassing and emotionally abusive was not clearly erroneous.

We also conclude that the record sufficiently supported the trial court's findings regarding the events at the hospital and the letter sent to petitioner's oral surgeon. The trial court's findings regarding the events at the hospital on the day of petitioner's surgery were

based on respondent's own testimony that he went to the hospital in an attempt to give his son and the doctor medical-history information. As for the letter, the trial court's ruling did not specifically find that respondent had composed the letter, but did attribute the letter and its tone to respondent. Although respondent testified that his wife sent the letter, he also testified about the contents of the letter without indicating any disagreement with its tone or content. Respondent failed to object or correct the trial court when it asked him questions referring to respondent as the letter's author: "So this is a letter that you wrote to the dentist?"; "Why didn't you say Dirk's mother [rather than identifying her as petitioner's legal guardian]?"; "You're writing this to the dentist?"; and "And so at this point in time you're writing this kind of letter rather than saying, 'I am Dirk's father. I'm responsible for health—his health insurance.' " Given this testimony, it was not erroneous to conclude that respondent, at the minimum, knew and approved of the letter's contents and tone.

We further conclude that the trial court did not err in holding that petitioner experienced emotional distress, as set forth in the stalking statute, MCL 750.411h, and that the statute does not require a showing of fear. Respondent offers no support for his assertions that the level of emotional distress required under MCL 750.411h is a "heightened" standard or that the distress must manifest itself as fear. The relevant portion of the statute does not require that the petitioner feel afraid, nor does it mention fear. MCL 750.411h(1)(b) defines "emotional distress" as "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." The harassment must have caused the petitioner to feel emotional distress and must be conduct that would cause a reasonable person to feel emotional distress, but

MCL 750.411h(1)(c) does not specify that this distress must present itself as fear. Presumably, emotional distress can manifest itself in more forms than fear. Furthermore, the statute lists several emotional reactions that the petitioner may have in response to stalking: feeling terrorized, frightened, intimidated, threatened, harassed, or molested. MCL 750.411h(1)(d). While many of them do in fact involve fear, the inclusion of "harassed" and "molested" demonstrate that fear is not necessarily required.

Petitioner explained that respondent's behavior caused him to feel stressed, embarrassed, and harassed. Respondent's actions penetrated petitioner's school, work, and family life and affected other members of petitioner's family, which caused further distress. Petitioner and his family had to resort to such lengths as changing their home telephone number in order to avoid contact with respondent. Considering all the evidence presented at the hearing, the trial court correctly concluded that petitioner did in fact experience, and a reasonable person would also have experienced, significant mental stress as a result of respondent's conduct. In sum, the trial court's findings of fact were not clearly erroneous, and this Court is not convinced that a different conclusion should have been reached. See *Sweebe, supra* at 154.

Respondent next argues that his conduct was protected because it served a legitimate purpose. Conduct that is constitutionally protected or that serves a legitimate purpose does not constitute "unconsented contact" and thus cannot amount to harassment. *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 723; 691 NW2d 1 (2005); MCL 750.411h(1)(c). The Michigan Supreme Court has interpreted the phrase "conduct that serves a legitimate purpose" to mean "conduct that contributes to a valid purpose that would

otherwise be within the law irrespective of the criminal stalking statute." *Nastal, supra* at 723.

Respondent's chosen method for obtaining medical information about petitioner—posting an advertisement in the newspaper—was not necessarily to "serve" a legitimate purpose. It was a highly unusual and extraordinary method for obtaining the information, especially by a father who was aware that his 18-year-old son was facing a frightening medical condition. Further, MCL 750.411h(4) provides that a rebuttable presumption arises that the victim was caused "to feel terrorized, frightened, intimidated, threatened, harassed, or molested" if a person continued to engage in unconsented contact even after the victim asked the person to discontinue this behavior or any further unconsented contact. There was evidence that petitioner asked respondent to stop calling or contacting him and to refrain from attending his school functions and the operation at the hospital; nonetheless, respondent continued to engage in these behaviors. Even if respondent had a partially legitimate motive for the contact, the trial court was entitled to conclude from the evidence that respondent was not acting for a legitimate purpose.

Affirmed.