# STATE OF MICHIGAN

# COURT OF APPEALS

---

DS, a Minor, by his Next Friend MICHELLE
COMERZAN,

Petitioner-Appellee,

v

GREGORY STAFFELD,

Respondent-Appellant.

UNPUBLISHED
March 26, 2015

No. 319169
Monroe Circuit Court
Family Division
LC No. 13-035174-PH

---

SS, a Minor, by his Next Friend MICHELLE
COMERZAN,

Petitioner-Appellee,

v

GREGORY STAFFELD,

Respondent-Appellant.

No. 319171
Monroe Circuit Court
Family Division
LC No. 13-035173-PH

---

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's orders denying his timely motions to terminate two of the three personal protection orders (PPOs) previously entered against him on an ex parte basis. We affirm.

The petition for the PPOs was brought by petitioner on behalf of herself and, as their next friend, on behalf of her two children, ages four and five. Respondent had served as the children's child care provider during much of 2011 and the first half of 2012. According to the petition, petitioner became concerned about the nature of respondent's relationship with the children in the summer of 2012 and directed him to cease all contact with them. She asserted that thereafter, respondent filed a false Child Protective Services (CPS) complaint against her,

-1-

repeatedly contacted petitioner asking her to allow him to visit the children, came to her home uninvited on one of the children's birthdays, became unexpectedly friendly with her ex-husband (against whom respondent had previously obtained a PPO), and appeared at the custody hearings involving her and her ex-husband, even though respondent lived five hours away. She also asserted that respondent was living in the same town as her ex-husband and she feared that respondent would use her ex-husband's parenting time as an opportunity to have contact with the children. She characterized his behavior as "obsessive" and stated that she was "in fear" for the safety of her children.

The lower court granted the petitions on an ex parte basis. Respondent timely moved to terminate the PPOs. After an evidentiary hearing at which both petitioner and respondent testified,[1] the trial court granted the motion to terminate the PPO as to petitioner personally, but denied the motion to terminate the PPO's as to the children. Respondent appealed the two denials.[2]

A PPO constitutes injunctive relief. MCL 600.2950a(32)(d). We review a grant or denial of injunctive relief, including a trial court's decision to deny a respondent's motion to rescind or terminate a PPO, for an abuse of discretion. *Pickering v Pickering*, 253 Mich App 694, 700-701; 659 NW2d 649 (2002). "An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say there is no justification or excuse for the ruling made." *Id*. (quotation marks and citation omitted). "[U]nder MCR 3.310(B)(5) the burden of justifying continuation of a PPO granted ex parte is on the applicant for the restraining order. Hence, the petitioner [has] the burden of persuasion in a hearing held on a motion to terminate or modify an ex parte PPO." *Id*. at 699. Additionally, we review the trial court's underlying factual findings for clear error and questions of statutory interpretation de novo. *Hayford v Hayford*, 279 Mich App 324, 325-326; 760 NW2d 503 (2008).

MCL 600.2950a(1) provides in relevant part: "[A]n individual may petition the family division of circuit court to enter a personal protection order to restrain or enjoin an individual from engaging in conduct that is prohibited under [MCL 750.]411h . . . ."

MCL 750.411h prohibits conduct that it defines as "stalking." Stalking is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411h(1)(d). "Course of conduct" is, in turn, defined as "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411h(1)(a). "Harassment" is defined as "conduct

---

[1] At the hearing, respondent agreed that the trial court could consider his actions after the PPOs were issued in determining whether the necessary number of improper contacts had been made. In exchange for this agreement, petitioner agreed not to seek an order of contempt against respondent for this post-PPO conduct.

[2] Petitioner does not appear to have appealed the termination of the PPO as to her personally.

directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411h(1)(c).

Respondent, while denying some of the actions alleged by petitioner, does not deny that the actions he did take were willful. Accordingly, the question is whether he undertook actions that constituted repeated or continuing harassment.

Petitioner testified that respondent continually called and begged to spend time with the children after she had explicitly told him not to contact her further. Respondent acknowledged that he repeatedly contacted petitioner for some time, but testified that it was simply a good-faith effort to repair the relationship and that he ceased doing so and never engaged in any threatening conduct. He also conceded that he repeatedly attended the custody hearings involving the children's parents, approached and spoke to the children when they came to a court office for a "family investigation," attended at least one visitation between the children and their biological father, and drove the biological father to the site of the visitation on two other occasions, although he stated that he did not enter the visitation site. He denied having come to petitioner's home.

Given the very young age of the children, i.e., four and five years old, it is reasonable to assume that contact with the children that was not consented to by their mother was also not consented to by the children. We also conclude that the actions respondent did not dispute could cause a reasonable person to suffer emotional distress.

It is less clear that respondent's conduct actually caused the children to suffer emotional distress, MCL 750.411h(1)(b) and (c), given their tender ages and the uncontested testimony that the children were very fond of respondent. Nevertheless, after reviewing the record, we do not find clear error in the trial court's conclusion that respondent had "a relationship with a couple of young boys, ages 4 and 5, that is unordinary, and he has pursued that relationship in a manner which is also unordinary." Nor do we find error in the trial court's conclusion that the totality of the circumstances—including "the fact that he had a PPO against the children's father, dropped that PPO, and now . . . is appearing at every custody hearing . . . , driving 5 hours to appear"— caused legitimate "concern that these children have something to fear" based on the "unordinary" way that respondent "has injected himself into these children's lives." Indeed, the ongoing nature of the situation was emphasized when, after the motions to terminate were denied, respondent's attorney requested that the court allow respondent to continue driving the children's biological father to visitation, potentially to include transporting the children to the father's home.

Respondent also argues that he was prejudiced by the court's limitation of his cross-examination of petitioner concerning his claim that her husband had engaged in domestic violence against her. We note that some cross-examination along these lines was permitted and, more to the point, any such limitation did not affect *respondent's* ability to testify about what he believed were the legitimate purposes behind his actions and the reasons he was concerned for the children's safety. He testified in detail as to his asserted good-faith motivations and the safety concerns that gave rise to the actions alleged in the petition. The trial court heard and considered that evidence before ruling on the motion to terminate the PPOs. Accordingly, we

reject respondent's claims that the trial court's ruling infringed upon his ability to be heard and to meaningfully participate in the process. *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995).

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro