*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

KO,

        Petitioner-Appellee,

v

MD,

        Respondent-Appellant.

UNPUBLISHED
December 15, 2022

No. 358567
Van Buren Circuit Court
LC No. 2021-071144-PP

Before: GLEICHER, C.J., and MARKEY and RICK, JJ.

PER CURIAM.

Respondent, MD, appeals by delayed leave granted[1] the trial court's order denying his motion to terminate an ex parte personal protection order (PPO) that was issued in connection with a PPO petition filed by petitioner, KO. We reverse and remand for an evidentiary hearing in which the trial court shall place the burden of proof on petitioner in regard to whether the PPO should be continued.[2]

The parties had once been friends and in a dating relationship. Petitioner sought an ex parte PPO against respondent on the basis of allegations that after she had attempted to cut all ties with respondent, there was an incident in which he verbally abused her, physically assaulted her, grabbed and threw her cell phone, and threatened her with a gun, which prompted police involvement. Petitioner further alleged and averred that following this incident, respondent, who purportedly could become extremely angry in a moment's time, continued to contact and harass her, sending her unwanted and unsolicited voicemails and text messages. Petitioner was concerned for her safety and the safety of her children.

---

[1] *KO v MD*, unpublished order of the Court of Appeals, entered January 28, 2022 (Docket No. 358567).

[2] If by the time this opinion is released the PPO no longer remains in effect, our ruling shall be considered moot and no further proceedings will be necessary.

The trial court issued the ex parte PPO against respondent. The PPO prohibited respondent from entering petitioner's property, assaulting her, threatening to kill or injure petitioner, interfering with her efforts to remove property from respondent's home, and from interfering with petitioner's employment or education. The order also precluded respondent from engaging in stalking conduct as defined under MCL 750.411h and MCL 750.411i. The order further prohibited respondent from purchasing or possessing a firearm and from engaging in threatening and harmful behavior in relation to an animal owned by petitioner.

Respondent, proceeding *in propria persona* in the trial court, moved to terminate the PPO. In a long rambling written narrative, respondent accused petitioner of lodging false allegations against him, manipulating, demeaning, and mistreating him, and otherwise engaging in offensive and despicable behavior. The trial court held a hearing on respondent's motion. The hearing was not a formal evidentiary hearing. Instead, the trial court described it as respondent's "opportunity to make an argument why this [PPO] should be terminated." Although he was not placed under oath to give testimony, respondent provided a description of his version of events, which were at odds with and contrary to petitioner's claims. As with his assertions in the motion to terminate the PPO, respondent spoke in long rambling narratives accusing petitioner of lying and all types of inappropriate and manipulative conduct. The trial court had to repeatedly redirect respondent's attention to matters pertinent to the PPO. Following respondent's statements, and without any input or evidence from petitioner, the trial court ruled as follows:

> I make the decision about whether or not it's a lie or what's reasonable. What I find interesting in that, is that I asked you five different times to fast forward to the handgun and that you avoided that subject. Finally, when I got you to talk about it, my understanding of your version is that during a heated exchange a handgun was out in the open and during the exchange you decide to move the handgun for safekeeping from one place to another for your safety. Now, your statement was that the gun is never loaded and it's your gun so even if she picked it up, you wouldn't have been in any harm's way; you would not have been in harm's way.

> \* \* \*

> But as a gun owner, I find in concerning—or at least it's not something I would have done—as a judge I find it concerning that during this heated exchange, and I understand it being heated—that you—your story, at least, is that that was a good time in your mind to move it from one point to another for safekeeping. It doesn't seem appropriate to me. It also doesn't seem believable. So, when she says—her version is that this handgun was displayed, it was pointed in my direction, that seems much more feasible to me. Furthermore, we got a complaint from another petitioner, [JB], who alleges that you ripped apart a refrigerator, punched walls, said that you should kill her, you're just like her.

> \* \* \*

> So, these two things together, and her fear, is additional evidence of your propensity to be violent and to cause someone to be fearful. So . . . . I'm going to

-2-

make a decision that is the personal protection order that was granted for [petitioner], that is going to stand; that will remain in place. It's not being terminated.

Following the hearing, the trial court entered an order denying respondent's motion to terminate the PPO. Respondent, now with counsel, appeals by delayed leave granted.

On appeal, respondent first argues that the trial court erred by entering the ex parte PPO against respondent. According to respondent, petitioner's petition alleged nothing more than unsolicited contact by respondent. And respondent maintains that it was actually petitioner who initiated the contact with respondent. Second, respondent contends that the PPO hearing failed to comport with due process. He argues that he was not afforded an opportunity to examine or cross-examine petitioner or to otherwise contest her claims. Respondent further posits that the burden to justify continuation of a PPO is on a petitioner, and yet, in this case, petitioner offered no proofs at the hearing. Respondent contends that rather than requiring petitioner to support her position, the trial court demanded that respondent establish a basis to terminate the PPO and rendered its decision on its own personal beliefs about how guns should be handled. Respondent ultimately asserts that there was no evidence to support continuation of the PPO.

In *Berryman v Mackey*, 327 Mich App 711, 717-718; 935 NW2d 94 (2019), this Court recited the review standards governing a PPO appeal:

> Because a PPO is an injunctive order, a trial court's decision whether to rescind a PPO is reviewed for an abuse of discretion. The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. A trial court necessarily abuses its discretion when it makes an error of law. The trial court's findings of fact are reviewed for clear error. A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. [Quotation marks and citations omitted.]

PPOs in the context of domestic relationships, including former dating relationships, are governed by MCL 600.2950. See *TM v MZ*, 501 Mich 312, 315; 916 NW2d 473 (2018). Under MCL 600.2950(4), a trial court must issue a PPO "if the court determines that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in [MCL 600.2950(1)[3]]." A PPO petitioner has the burden of establishing reasonable cause for a court to issue a PPO and of establishing justification for a court to continue a PPO at a hearing on a respondent's motion to terminate the PPO. *SP v BEK*, ___ Mich App ___, ___; ___ NW2d ___ (2021); slip op at 5 (Docket Nos. 353984 and 353992); *Hayford v Hayford*, 279 Mich App 324, 326; 760 NW2d 503 (2008). MCL 600.2950(4) provides:

> [I]n determining whether reasonable cause exists, the court shall consider all of the following:

---

[3] Those acts include, in part, assaultive, threatening, and stalking behavior. MCL 600.2950(1)(b), (c), and (j).

(a) Testimony, documents, or other evidence offered in support of the request for a personal protection order.

(b) Whether the individual to be restrained or enjoined has previously committed or threatened to commit 1 or more of the acts listed in subsection (1).

A PPO may be entered on an ex parte basis, i.e., without oral or written notice to the individual to be restrained, "if it clearly appears from specific facts shown by a verified complaint, written motion, or affidavit that immediate and irreparable injury, loss, or damage will result from the delay required to effectuate notice or that the notice will itself precipitate adverse action before a [PPO] can be issued." MCL 600.2950(12). See also MCR 3.705(A)(2). When a PPO enters on an ex parte basis, "[a] motion to modify or rescind the personal protection order must be filed within 14 days after the order is served or after the individual restrained or enjoined has received actual notice of the personal protection order unless good cause is shown for filing the motion after the 14 days have elapsed." MCL 600.2950(13). See also MCR 3.707(A)(1)(b). In general, "the court shall schedule a hearing on a motion to modify or rescind the ex parte personal protection order within 14 days after the motion is filed." MCL 600.2950(14). Again, at this hearing, the *petitioner* bears the burden of justifying the continuation of the PPO.

In this case, petitioner obtained an ex parte PPO, and respondent contends on appeal that the trial court erred by entering the PPO on an ex parte basis. On this issue, we disagree. Contrary to respondent's assertions that petitioner alleged nothing more than unsolicited contacts from respondent, the documents attached to the petition, including an affidavit, plainly contained allegations of an incident in which respondent pointed a gun at petitioner, interfered with her attempts to make a phone call, grabbed her wrist, and then shoved her. Accordingly, the trial court had a reasonable basis for issuing an ex parte PPO.

After the trial court issued the PPO, respondent moved to terminate the PPO, and the court scheduled a hearing. On appeal, respondent challenges the trial court's decision to continue the PPO after the hearing, arguing (1) that the hearing did not comport with due process and (2) that the evidence did not support continuation of the PPO. We conclude that reversal is warranted on this issue.

Again, the trial court began the hearing by describing the hearing as respondent's "opportunity to make an argument why this [PPO] should be terminated." The legal standard, however, places the burden on petitioner to justify the continuation of the PPO, and the burden of persuasion undoubtedly rested on petitioner. See *Pickering v Pickering*, 253 Mich App 694, 699; 659 NW2d 649 (2002). In this context, it is also "more appropriate," though not necessarily required, that the petitioner be the party to first come forward with evidence at the hearing. *Id*. at 700 n 1. Yet, in this case, petitioner offered no evidence at the hearing, and she made no argument at all regarding the continuation of the PPO. Indeed, petitioner, who appeared *in propria persona*, never even spoke during the hearing.[4] Considering the hearing as a whole, it is patent that the trial

---

[4] Petitioner has not filed an appellee brief in this appeal.

court erroneously placed the onus on respondent to establish for the court why the PPO should be terminated instead of requiring petitioner to meet her legal burden to justify its continuation.

Moreover, an actual evidentiary hearing—not simply a one-sided argument from respondent—is merited on the facts and circumstances of this case. In *Pickering*, 253 Mich App at 698, this Court explained that to the extent the PPO statutes and court rules are silent on issues related to a hearing on a PPO, the procedures in MCR 3.310, which generally govern requests for injunctive relief, apply in the context of PPOs, provided that there is no conflict between MCR 3.310 and the more specific PPO rules. With respect to injunctive relief generally, caselaw is clear that while a "formal hearing" is required, an evidentiary hearing is not mandatory. *Campau v McMath*, 185 Mich App 724, 728; 463 NW2d 186 (1990). "If a party's entitlement to the injunction can be established in a particular case by argument, brief, affidavits or other forms of nontestamentary evidence, the trial court need not take testimony at the hearing." *Id*. "The trial court must, however, conduct an evidentiary hearing where the circumstances of the case require such a hearing." *Id*.; see also, e.g., *Fancy v Egrin*, 177 Mich App 714, 723; 442 NW2d 765 (1989) (concluding that an evidentiary hearing was warranted when request for injunctive relief was supported only by a "relatively brief affidavit" from the plaintiff and the record did not include significant argument or briefing of the issues by the parties).

These general rules for determining when an evidentiary hearing is warranted for injunctions do not appear to conflict with the more specific rules for PPOs insofar as MCL 600.2950(13) and (14) require a "hearing" but do not expressly mandate any particular type of hearing, evidentiary or otherwise. MCR 3.707(A)(2) similarly requires a "hearing" but provides no elaboration or elucidation. Accordingly, while a formal hearing must be held when requested under MCL 600.2950(13)-(14) and MCR 3.707(A)(2), there may be times when a full evidentiary hearing is not warranted on a motion to terminate a PPO. But the court "must . . . conduct an evidentiary hearing where the circumstances of the case require such a hearing." *Campau*, 185 Mich App at 728; see also *Fancy*, 177 Mich App at 723.

Generally, the decision to hold an evidentiary hearing is within the discretion of the trial court. See *Williams v Williams*, 214 Mich App 391, 399; 542 NW2d 892 (1995). An evidentiary hearing may not be required, for example, when "there [is] no dispute with respect to the facts" and the issue to be resolved constitutes a question of law for the court. *In re Skotzke Estate*, 216 Mich App 247, 252; 548 NW2d 695 (1996). In contrast, an evidentiary hearing is more likely to be required when there are issues of credibility involved, particularly issues that warrant assessment of witness demeanor to evaluate his or her credibility. See *Williams*, 214 Mich App at 399 (noting that in-person demeanor assessment may be warranted when two or more witnesses have competing factual claims and there is no externally analyzable indicia of truth).

Moreover, there are due process concerns to consider when deciding whether an evidentiary hearing is warranted. See *Traxler v Ford Motor Co*, 227 Mich App 276, 288; 576 NW2d 398 (1998). This Court explained:

> Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker. The opportunity to be heard does not mean a full trial-like

proceeding, but it does require a hearing to allow a party the chance to know and respond to the evidence. [*Id.* (quotation marks and citation omitted).]

In this case, in seeking the ex parte PPO, petitioner submitted documents alleging the incident involving the gun and associated assault and making claims that respondent sent her harassing texts and voicemail messages. She did not provide the voicemails to the trial court, and although she submitted a document purporting to show text-message activity, most of the messages are not visible. Moreover, there is clear indication in the text messages that respondent was the sender.[5] At the hearing, petitioner presented no new evidence and did not even speak. Respondent did speak at the hearing, but he was not placed under oath. And in offering his argument why the PPO should be terminated, respondent denied petitioner's allegations and, more specifically, denied pointing a gun at her. He claimed instead that he simply moved the gun. Respondent also more generally maintained that petitioner had a history of lying and telling untruths about him, including fabrications designed to place her in the role of the "victim."

Respondent's conduct in wielding the gun appears to have been a pivotal issue in the trial court's ruling. That is, considering the trial court's remarks on the record, respondent's conduct related to the gun formed the crux of the trial court's rationale for continuing the PPO. Yet, the factual events related to the gun were not undisputed. To the contrary, the record demonstrated that there were fact questions surrounding the events at issue—most notably, the incident involving the gun—and that there were issues of credibility that warranted an evidentiary hearing to assess petitioner's and respondent's respective demeanors. In this context, we conclude that it was improper for the trial court to make a one-sided assessment of respondent's credibility on the basis of his argument, essentially unsworn testimony, at the hearing and to simply accept as true petitioner's allegations without evaluating her credibility and demeanor, particularly when the burden of justifying the continuation of the PPO was on petitioner. Instead, given the existence of a factual dispute, an evidentiary hearing was warranted for both parties to testify under oath and to offer other evidence as relevant to support their positions, so as to enable an assessment of their respective credibility by the court.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Michelle M. Rick

---

[5] The few visible text messages are troubling, and the nature of those messages strongly suggest that respondent was the sender.