*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VB,

Petitioner-Appellee,

v

KA,

Respondent-Appellant.

UNPUBLISHED
May 23, 2024

No. 364255
Kent Circuit Court
LC No. 22-001524-PP

Before: YATES, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Respondent, KA, appeals as of right the trial court's order affirming the referee's decision to deny respondent's motion to terminate an ex parte personal protection order (PPO) following de novo review. The PPO was obtained by respondent's ex-wife, petitioner, VB, after respondent attended petitioner's minor son's high school hockey game. On appeal, respondent argues that the trial court abused its discretion by upholding the PPO because it was issued on the basis of conduct that was constitutionally protected under the First Amendment, US Const, Am I. Moreover, respondent asserts that the court erred by upholding the PPO considering that there was no credible evidence that respondent may commit one of the acts listed in MCL 600.2950(1). Finally, respondent argues that the court erred by upholding the PPO, as petitioner's actions demonstrate her desire to wrongfully use the PPO statute as a sword against respondent rather than a shield. We conclude that respondent's arguments are without merit and affirm.

## I. FACTS AND PROCEDURAL HISTORY

This appeal arises out of an ex parte PPO that was granted to petitioner against respondent. Petitioner and respondent were married for two years. The divorce was final in June 2021. Petitioner had two children from a previous relationship, ES and NS. At the time the PPO in this case was filed, ES was 20 years old and NS was 17 years old. NS played high school hockey. His "senior night" game, which was the final game of the regular season of his senior year, was held on February 16, 2022. Respondent attended that game with his fiancée, BB. Petitioner asked the athletic director to request that respondent and BB leave the game but respondent refused.

Petitioner then sought a PPO against respondent. In the petition, petitioner alleged that she filed for divorce from respondent because of verbal and emotional abuse that was escalating to physical and sexual abuse against her. She further alleged that respondent was aggressive and attempted to physically assault her sons. Moreover, petitioner alleged in the petition that respondent had to be told repeatedly throughout the divorce proceedings not to contact petitioner directly, but to contact her through her attorney. However, petitioner asserted, respondent continued to harass her through e-mails and refused to contact her through her attorney. According to petitioner, respondent attempted to contact NS using social media. She explained that this contact was unwanted. In addition, she stated that respondent attended NS's most recent hockey game. She alleged that "security" asked respondent and his girlfriend to leave but he refused. Respondent stated that it was a public place and that he did not have to leave because there was no PPO. Petitioner stated that she "was visibly shaking the whole time due to fear of what he had planned." She explained that she had someone escort her and both of her sons outside "because we were so scared to leave." Petitioner stated that she knew that respondent was drinking because he received a drunk-driving conviction in November 2021, and he was violent and unpredictable while he was drinking.

The trial court issued an ex parte PPO. Respondent then moved to terminate the PPO. He denied petitioner's claims that he ever threatened petitioner or either of her children. He admitted to sending e-mails to petitioner during the divorce, but he asserted that the e-mails were professional and cordial. He further admitted to attending the hockey game but argued that he purposefully took actions—such as arriving and leaving early—to avoid any confrontation with petitioner.

After holding a two-day evidentiary hearing, the referee denied respondent's motion to dismiss the PPO. Respondent then sought de novo review of the referee's decision from the trial court. The trial court affirmed the referee's decision denying the motion to dismiss. The PPO remained in place until it expired. This appeal followed.

II. ANALYSIS

A. STANDARD OF REVIEW

"The granting and continuation of a PPO is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *SP v BEK*, 339 Mich App 171, 176; 981 NW2d 500 (2021) (quotation marks and citation omitted). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Id*. (quotation marks and citation omitted). "A trial court's findings of fact underlying a PPO ruling are reviewed for clear error. The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citations omitted). Moreover, this Court must give regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*. (quotation marks and citation omitted). See also MCR 2.613(C). "Issues of constitutional law, including the application of the First Amendment, are reviewed de novo." *Buchanan v Crisler*, 323 Mich App 163, 175; 922 NW2d 886 (2018).

## B. CONSTITUTIONALLY PROTECTED CONDUCT

First, respondent argues that the trial court abused its discretion by failing to rescind the PPO because respondent's presence at the hockey game was constitutionally protected by the First Amendment. We disagree.

This appeal concerns a PPO issued pursuant to MCL 600.2950, which concerns orders issued in domestic situations involving former spouses. According to MCL 600.2950(4), in pertinent part, "[t]he court shall issue a personal protection order under this section if the court determines that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in subsection (1)." MCL 600.2950(1) prohibits the following actions:

(a) Entering onto premises.

(b) Assaulting, attacking, beating, molesting, or wounding a named individual.

(c) Threatening to kill or physically injure a named individual.

(d) Removing minor children from the individual having legal custody of the children, except as otherwise authorized by a custody or parenting time order issued by a court of competent jurisdiction.

(e) Purchasing or possessing a firearm.

(f) Interfering with petitioner's efforts to remove petitioner's children or personal property from premises that are solely owned or leased by the individual to be restrained or enjoined.

(g) Interfering with petitioner at petitioner's place of employment or education or engaging in conduct that impairs petitioner's employment or educational relationship or environment.

(h) If the petitioner is a minor who has been the victim of sexual assault, as that term is defined in section 2950a, by the respondent and if the petitioner is enrolled in a public or nonpublic school that operates any of grades K to 12, attending school in the same building as the petitioner.

(i) Having access to information in records concerning a minor child of both petitioner and respondent that will inform respondent about the address or telephone number of petitioner and petitioner's minor child or about petitioner's employment address.

(j) Engaging in conduct that is prohibited under section [MCL 750.411h and MCL 750.411i].

(k) Any of the following with the intent to cause the petitioner mental distress or to exert control over the petitioner with respect to an animal in which the petitioner has an ownership interest:

(*i*) Injuring, killing, torturing, neglecting, or threatening to injure, kill, torture, or neglect the animal. A restraining order that enjoins conduct under this

subparagraph does not prohibit the lawful killing or other use of the animal as described in section [MCL 750.50(11)].

> (*ii*) Removing the animal from the petitioner's possession.

> (*iii*) Retaining or obtaining possession of the animal.

> (*l*) Any other specific act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence.

"MCL 600.2950(1)(j) allows a court to restrain individuals from engaging in conduct that is prohibited under MCL 750.411h," which is also known as Michigan's "stalking statute." *SP*, 339 Mich App at 181. According to MCL 750.411h(1)(e), "stalking" is defined as

> a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

"Harassment" is defined as

> conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose. [MCL 750.411h(1)(d).]

"Course of conduct" is "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411h(1)(a).

"The petitioner bears the burden of establishing reasonable cause for issuance of a PPO and of establishing a justification for the continuance of a PPO at a hearing on the respondent's motion to terminate the PPO." *SP*, 339 Mich App at 181 (quotation marks and citation omitted). "The trial court must consider the testimony, documents, and other evidence proffered and whether the respondent had previously engaged in the listed acts." *Id*. (quotation marks and citation omitted). The court shall issue an ex parte PPO

> if it clearly appears from specific facts shown by a verified complaint, written motion, or affidavit that immediate and irreparable injury, loss, or damage will result from the delay required to effectuate notice or that the notice will itself precipitate adverse action before a personal protection order can be issued. [MCL 600.2950(12).]

"[T]he court must make a positive finding of prohibited behavior by the respondent before issuing a PPO." *SP*, 339 Mich App at 181 (quotation marks and citation omitted).

In this case, respondent asserts that the PPO was invalid because it was issued on the basis of him participating in a constitutionally protected activity—attending the hockey game. Respondent frames his claim as a free-speech issue under the First Amendment. "The First

Amendment of the United States Constitution provides that Congress shall make no law . . . abridging the freedom of speech . . . ." *Buchanan*, 323 Mich App at 181 (quotation marks and citation omitted). See also US Const, Am I. "The Michigan Constitution provides the same protection under Const 1963, art 1, § 5 . . . ." *Buchanan*, 323 Mich App at 181.

However, respondent's attendance at the hockey game does not involve speech. "The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech." *Virginia v Black*, 538 US 343, 358; 123 S Ct 1536; 155 L Ed 2d 535 (2003). The PPO was not issued on the basis of something that respondent said at the hockey game. Indeed, the referee concluded that the evidence concerning whether respondent "booed" NS was unclear. Moreover, it does not appear that respondent's attendance was meant to communicate some sort of message, such as burning the flag. To any extent that he argues he attended the game to show support for NS, NS did not even know respondent was in attendance until after the game, and he testified that he did not invite respondent or want respondent to attend.

In any event, even if respondent has raised a valid First Amendment claim, "the freedom of speech is not absolute." *Buchanan*, 323 Mich App at 181. "[A] person's right to free speech must be understood in light of another person's interest in being left alone." *ARM v KJL*, 342 Mich App 283, 299; 995 NW2d 361 (2002). As stated by the United States Supreme Court in *Hill v Colorado*, 530 US 703; 120 S Ct 2480; 147 L Ed 2d 597 (2000):

> None of our decisions has minimized the enduring importance of a right to be free from persistent importunity, following and dogging after an offer to communicate has been declined. While the freedom to communicate is substantial, the right of every person to be let alone must be placed in the scales with the right of others to communicate. [*Id*. at 718 (quotation marks and citation omitted).]

In this case, respondent admitted that he did not have a relationship with NS following the divorce. He had not attended any of NS's hockey games in two years. NS had previously blocked respondent's phone number on his phone, and he blocked respondent from following him on social media. He did not invite respondent to attend any of his games. The evidence showed that respondent contemplated that his attendance at the game would cause issues. He arrived early, attempted to sit away from the crowd, sent his fiancée to purchase the tickets and snacks, and he left early. Moreover, the athletic director asked respondent to leave, citing petitioner's concerns that respondent may become violent. However, respondent declined to leave. Respondent had a problematic history with ES and petitioner, which included an incident that resulted in damage to ES's bedroom door. In addition, during the divorce proceedings, petitioner asked respondent not to contact her directly. Rather, respondent was directed to send his communications to petitioner's attorney. It would be reasonable to believe that petitioner and ES would attend NS's senior night game and that they would be sitting in the stands. Petitioner testified that she believed that respondent would attend more games and events because he stated that he could and that there was nothing that petitioner could do to stop him.

Accordingly, because petitioner and NS had previously taken steps to avoid contact with respondent, the trial court's decision to issue and uphold the PPO, at least in part, on the basis of respondent's attendance at the hockey game did not violate respondent's First Amendment rights. See *ARM*, 342 Mich App at 299 (concluding that the trial court did not violate the respondent's

right to free speech by finding the respondent in contempt for contacting the petitioner, rather than for the content of his speech that he used to make the contact).

Similarly, respondent's claim that his attendance at the hockey game served a legitimate purpose is without merit for many of the same reasons. The phrase "conduct that serves a legitimate purpose" has been interpreted to mean "conduct that contributes to a valid purpose that would otherwise be within the law irrespective of the criminal stalking statute." *Hayford v Hayford*, 279 Mich App 324, 332-333; 760 NW 2d 503 (2008) (quotation marks and citation omitted).

In this case, respondent did not have a relationship with NS, and he had not been invited to attend the game. In fact, NS had blocked respondent from sending him text messages and following him on social media. Petitioner had also previously asked respondent not to contact her directly. In addition, respondent's own actions at the game show that he knew that his presence would cause a problem. As a result, respondent's attendance at the hockey game was not for a legitimate purpose. See *id*. (explaining that there was evidence that the respondent continued to contact the petitioner even after the petitioner asked the respondent to stop contacting him and refrain from attending his school functions, so even if the respondent had a partially legitimate reason for the contact, the court was entitled to conclude that he was not acting for a legitimate purpose).

Accordingly, the trial court did not abuse its discretion by denying respondent's motion to terminate the PPO because the PPO did not violate respondent's First Amendment rights. See *SP*, 339 Mich App at 176.

## C. REASONABLE CAUSE

Next, respondent asserts that the trial court erred by upholding the PPO because there was no credible evidence to support the finding that there was reasonable cause to believe that respondent may commit one of the acts listed in MCL 600.2950(1). We disagree.

As previously explained, MCL 600.2950(4) requires a court "to issue a PPO if it determines that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in [MCL 600.2950(1)]." *Pickering v Pickering*, 253 Mich App 694, 701; 659 NW2d 649 (2002). MCL 600.2950(1)(b) includes "[a]ssaulting, attacking, beating, molesting, or wounding a named individual." MCL 600.2950(1)(c) encompasses "[t]hreatening to kill or physically injure a named individual." Moreover, MCL 600.2950(1)(*l*) includes "[a]ny other specific act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence." "In determining whether good cause exists, the trial court is required to consider testimony, documents, or other evidence and whether the individual to be restrained . . . has previously committed or threatened to commit 1 or more of the acts listed in [MCL 600.2950(1)]." *Pickering*, 253 Mich App at 701, quoting MCL 600.2950(4)(a) and (b) (quotation marks omitted). MCL 600.2950(12) provides:

> A court shall issue an ex parte personal protection order without written or oral notice to the individual restrained or enjoined or his or her attorney if it clearly appears from specific facts shown by a verified complaint, written motion, or affidavit that immediate and irreparable injury, loss, or damage will result from the

delay required to effectuate notice or that the notice will itself precipitate adverse action before a personal protection order can be issued.

Respondent argues on appeal that the trial court erred by upholding the ex parte PPO because it was not supported by credible evidence. At the evidentiary hearing, petitioner testified that respondent had made threats against her and ES. She also claimed that respondent sexually assaulted her during the marriage. She specifically described an incident in which respondent punched a hole in ES's bedroom door during an argument, and she called the police. The parties separated shortly after this incident. Moreover, petitioner testified that she knew that respondent had a domestic-violence conviction from an incident involving his brother. She also knew that respondent had been charged with drunk driving in November 2021. She testified that respondent was "unpredictable and violent" when he was drinking alcohol. She further testified that respondent repeatedly came to her house and sent her threatening or harassing e-mails during the divorce proceedings.

Petitioner acknowledged that respondent's presence at the hockey game was what caused her to request the PPO. She attempted to stay on the other side of the rink to take pictures. She was "shaking so bad" that she did not get many pictures of the game. She explained that respondent being at the hockey game made her feel scared. NS and ES's father testified that ES appeared to be "extremely uncomfortable" and "frightened" at the hockey game. He also said that petitioner was "pretty upset." In addition, NS testified that petitioner looked worried after the hockey game.

As a result, contrary to respondent's assertion, there was testimony provided at the evidentiary hearing establishing reasonable cause to believe that respondent may commit one or more of the acts listed in MCL 600.2950(1), such as causing a reasonable apprehension of violence. See MCL 600.2950(4); MCL 600.2950(1)(*l*). Respondent argues that petitioner's allegations were not credible and were uncorroborated. Although the referee stated that petitioner's failure to introduce the threatening e-mails weakened her credibility and that petitioner's behavior toward BB at the hockey game raised a question whether she was fearful of respondent being there, overall the referee found petitioner's testimony to be credible. The trial court accepted the referee's findings, except for the allegation that petitioner sent Facebook messages to BB's ex-husband under a fake name. This Court must defer to the trial court concerning credibility determinations. See *SP*, 339 Mich App at 176.

Respondent further argues that the PPO was improperly issued on the basis of his attendance at the hockey game. However, respondent had not had any in-person contact with NS since the parties separated in July 2020. Respondent had not been invited to the game. NS testified that he did not want respondent to attend. Respondent knew that his presence would possibly cause a confrontation with petitioner. There was also testimony that petitioner and ES exhibited emotional distress after discovering that respondent was in attendance. See *id*. at 187 (concluding that the respondent's presence at the children's basketball games was meant to frighten and harass them considering the history of sexual-abuse allegations and the termination of the respondent's parental rights).

Respondent further argues that the trial court relied on uncorroborated allegations that were improperly admitted into evidence without following the safeguards of MRE 404(b).[1]  However, respondent never objected to the presentation of any evidence on the ground that it violated MRE 404(b).  See MRE 103(a)(1).  Therefore, this issue was never ruled on by the trial court.  "If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ____ (2023) (Docket No. 359090); slip op at 3.  In any event, MCL 600.2950(4)(b) directs a trial court to consider whether the respondent "has previously committed or threatened to commit" one or more acts listed in MCL 600.2950(1).  As a result, we do not agree that petitioner's allegations concerning respondent's past actions were admitted in violation of MRE 404(b).

Accordingly, considering the evidence presented at the evidentiary hearing, the trial court did not abuse its discretion by denying respondent's motion to dismiss the PPO.  See *SP*, 339 Mich App at 176.

## D.  IMPROPER PURPOSE

Finally, respondent argues that the trial court erred by upholding the PPO because petitioner obtained the PPO for an improper purpose.  We disagree.

First, as previously discussed, there was sufficient evidence supporting the issuance and continuance of the PPO.  Second, petitioner sought the PPO after respondent attended her son's hockey game uninvited after not having contact with petitioner or her son for several months.  Petitioner last had contact with respondent during the divorce proceedings, and she asked respondent not to contact her directly and to send all communications through her attorney.  She testified that respondent continued to send her e-mails and show up at her house.  At the evidentiary hearing, petitioner testified that she wanted respondent to leave her and her children alone, and that she did not believe that respondent would leave her alone without a PPO.  She believed that he would attend more of her son's games and activities because there was nothing stopping him from attending.

Respondent admitted that he attended the hockey game.  He knew that petitioner and ES were also at the game.  His actions—such as arriving and leaving early—showed that he was aware that his presence would cause a possible confrontation with petitioner.  When the athletic director asked respondent to leave, he refused.

The testimony showed that respondent continuously contacted petitioner even after she asked him to stop and that respondent continued contact after the divorce was finalized.  Moreover, because respondent refused to leave the game at petitioner's request, the evidence indicated that respondent would continue to contact petitioner and her sons unless a PPO was issued.  Therefore, petitioner sought and obtained the PPO for the proper purpose of protecting herself from respondent's unwanted contact.  See MCL 600.2950(1).  Accordingly, the trial court did not abuse

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024.  See ADM File No. 2021-10, 512 Mich lxiii (2023).  This opinion relies on the version of MRE 404(b) in effect at the time of the evidentiary hearing.

its discretion by denying the motion to terminate the PPO on the basis of respondent's claim that petitioner sought the PPO for an improper purpose. See *SP*, 339 Mich App at 176.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra