*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GL,

                Petitioner-Appellee,

v

JLM,

                Respondent-Appellant.

UNPUBLISHED
January 13, 2025
3:20 PM

No. 370973
Wayne Circuit Court
LC No. 23-110449-PP

Before: GADOLA, C.J., and RICK and MARIANI, JJ.

PER CURIAM.

In this action regarding a personal protection order (PPO), respondent appeals as of right the trial court's order denying his motion to terminate the PPO granted to petitioner. We affirm.

## I. FACTUAL BACKGROUND

Petitioner and respondent dated for about four months in 2019. They were last in physical contact in November 2019. After the couple broke up, petitioner alleged that respondent had his friends follow her, and had a woman scratch petitioner's car. She further alleged that he asked one of petitioner's acquaintances to copy her apartment key and used it to enter her apartment and move items. Petitioner also alleged that respondent impermissibly accessed her emails, text messages, and photographs, and deleted thousands of photographs. Petitioner changed her cell phone number three times between 2019 and 2023. Nevertheless, in September 2023, petitioner received three strange text messages from three different phone numbers. No one answered when she tried calling the phone numbers. She believed that the text messages were from respondent because they matched his typing style. Two of the text messages suggested getting together for grilled fish and wine, which petitioner said respondent knew she liked.

Petitioner filed for an ex parte PPO in September 2023, based on the aforementioned allegations. The trial court granted the motion for a PPO. Respondent moved to terminate the PPO in November 2023. At a January 2024 hearing on the matter, petitioner stated that she received another text message from respondent on December 31, 2023, after he had been served with the PPO. She did not testify as to its contents. The trial court asked petitioner about respondent's text messaging style. Petitioner stated that respondent did not use punctuation or

-1-

capital letters in his text messages and would put two spaces between words. This was true of his text messages while they were dating.

Respondent's counsel presented four screenshots of text messages between petitioner and respondent from February 2020. Petitioner confirmed the messages were between her and respondent. In one of the messages, respondent left two spaces between sentences, not between words, as petitioner had attested. Respondent did not put punctuation at the end of a sentence. In another message, respondent used capital letters and punctuation. He did not end a short message with a period, but petitioner acknowledged that she also did not end short messages with punctuation. Respondent's counsel pointed to three messages where respondent used capital letters and punctuation. Respondent often did not end his final sentence in a text message with punctuation.

Respondent's counsel argued that there was nothing tying the September 2023 text messages to respondent. Petitioner stated that she knew the messages were from respondent because he enjoyed seeing petitioner in pain and was playing mind games. They had lived together for four months and "none of it happened until I—after I ended things with [respondent]." Respondent then took the stand and stated that he had not sent petitioner the three text messages in September 2023. He asserted that the last contact he had with petitioner was in February 2020, at which point he asked her not to contact him. He further stated that he had not sent anyone to spy on or follow petitioner and had no reason to contact her. He denied knowing how to pair an iPhone to read someone else's messages or delete photographs. The trial court denied the motion to terminate the PPO, finding that petitioner was credible and that a reasonable person in the same circumstances would feel threatened by the text messages. This appeal followed.

## II. ANALYSIS

Respondent argues that the trial court abused its discretion in denying his motion to terminate the PPO.[1] We disagree.

This Court reviews the trial court's decision on a motion to grant or terminate a PPO for an abuse of discretion. *Pickering v Pickering*, 253 Mich App 694, 700; 659 NW2d 649 (2002). The trial court abuses its discretion when the outcome is "outside the range of principled outcomes." *Nowacki v Dep't of Corrections*, 319 Mich App 144, 148; 900 NW2d 154 (2017). An abuse of discretion has occurred if the trial court made an error of law. *PF v JF*, 336 Mich App 118, 126; 969 NW2d 805 (2021). The trial court's findings of facts underlying its decision on the

---

[1] The PPO against respondent expired on September 26, 2024. There is no evidence of any efforts to extend it. Respondent nevertheless requested this Court reverse the trial court's denial of his motion to terminate the PPO. In general, this Court does not decide moot cases. *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018). A case is moot when a judgment will not have any "practical legal effect upon a then existing controversy." *Id*. However, the expiration of a PPO alone does not render it moot. *Id*. at 319. Thus, although respondent does not identify any continuing impact of the expired PPO, we determine that this case is not moot. *Id*.

PPO are reviewed for clear error. *CAJ v KDT*, 339 Mich App 459, 464; 984 NW2d 504 (2021). Clear error occurs if this Court has a firm and definite conviction that a mistake was made. *Id.*

A PPO may be granted to restrain or enjoin a current or former spouse, current or former dating partner, current or former members of the same household, or the other biological parent of a child. *TT v KL*, 334 Mich App 413, 439; 965 NW2d 101 (2020); MCL 600.2950(1). At the hearing on respondent's motion to terminate the PPO, respondent confirmed that he and petitioner were previously in a dating relationship. It was therefore appropriate that petitioner file for a domestic relationship PPO. *TT*, 334 Mich App at 439. The petitioner carries the burden of demonstrating reasonable cause that the PPO should be granted, and that it should remain in place if the respondent moves for its termination. *Hayford v Hayford*, 279 Mich App 324, 326; 760 NW2d 503 (2008). The trial court must consider the totality of the circumstances between the parties when deciding to grant or deny a PPO. *PF*, 336 Mich App at 130. There must be a "positive finding of prohibited behavior" by the respondent before the PPO can be issued. *SP v BEK*, 339 Mich App 171, 181; 981 NW2d 500 (2021) (citation omitted). The trial court must issue a PPO if it determines there is "reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in [MCL 600.2950(1)]." *Pickering*, 253 Mich App at 701; MCL 600.2950(4).

This Court gives deference to the trial court's ability to observe witnesses and determine their credibility. *SP*, 339 Mich App at 176. The trial court must consider testimony, documents, and "other evidence proffered and whether the respondent had previously engaged in the listed acts [in MCL 600.2950(1)]." *Hayford*, 279 Mich App at 329 (citation omitted). A "fair-minded person of average intelligence" must be able to believe that the respondent could commit one of the acts enumerated in MCL 600.2950. *PF*, 336 Mich App at 125. In other words, a trial court should not suspend reality when making credibility determinations or weighing evidence.

Engaging in conduct that violates MCL 750.411h supports issuing a PPO. *Hayford*, 279 Mich App at 329; MCL 600.2950(1)(*j*). This conduct may include stalking, harassment, and unconsented contact, all of which are at issue in this matter. Stalking is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411h(e). Harassment is defined as "continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes emotional distress." MCL 450.411h(d). Unconsented contact includes any contact with a person that is started or continued without their consent or against their express wishes, including through electronic communication methods. *Hayford*, 279 Mich App at 330; MCL 750.411h(1)(f). Emotional distress is defined as significant mental distress that may require professional treatment. *Hayford*, 279 Mich App at 331; MCL 750.411h(1)(c).

In her ex parte petition for a PPO, petitioner alleged that respondent induced someone to copy her apartment key and that he would enter her residence to take things or move them. She stated that respondent had his friends follow her and that a woman scratched her car at respondent's request. She alleged that respondent had access to her cell phone and e-mail account, and used this access to read her messages and delete her photographs. After the PPO was filed, petitioner received multiple text messages from unknown numbers that she believed were sent by respondent.

She presented evidence of those text messages at the hearing. The text messages came from three different phone numbers. Two of the texts referenced inviting petitioner over for grilled fish and wine, suggesting that the same person sent them. No one picked up the phone when petitioner called the phone numbers, and she stated that respondent's texting style matched that of the three texts sent from unknown numbers. Petitioner stated that she is afraid of respondent.

The September 2023 text messages were electronic communications sent from a series of unknown phone numbers without petitioner's consent, after she had changed her phone number multiple times. *Hayford*, 279 Mich App at 330; MCL 750.411h(1)(f). The text messages came from a former dating partner who petitioner alleged had sent other people to follow and harass her, repeatedly accessed her apartment, viewed personal emails and messages, and deleted personal photographs. Text messages from several unknown numbers, when received under the circumstances presented here, would undoubtedly cause a reasonable person to experience mental distress. *Hayford*, 279 Mich App at 329; MCL750.411h(1)(d). Record evidence indicates that petitioner was in fact distressed by the continued contact. See *Hayford*, 279 Mich App at 329; MCL750.411h(1)(d).

The trial court found that petitioner's testimony was credible, and that it was clear that she was frightened by the text messages. The court stated:

> I don't think [GL]'s accusations are outlandish. They don't sound made up to me. It sounds like a woman who's frightened and who is concerned.
>
> She actually moved into a shelter some time ago, years ago.
>
> I find her testimony credible and I do think that a reasonable person with the same circumstances would feel threatened by contact after so many years.
>
> I do believe her testimony that these text messages have the same kind of wording that [JLM's] past messages had.
>
> I believe the petitioner so, I am denying the motion to terminate the PPO at this time.

We defer to the trial court on findings of credibility, and conclude that on this record, the trial court's findings were not clearly erroneous. *SP*, 339 Mich App at 176; *CAJ*, 339 Mich App at 464. The trial court's denial of respondent's motion to terminate the PPO was therefore not an abuse of discretion. Respondent is not entitled to relief.

Affirmed.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Philip P. Mariani

-4-