*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PC,

        Petitioner-Appellant,

v

JLS,

        Respondent-Appellee.

FOR PUBLICATION
April 6, 2023
9:10 a.m.

No. 361161
Wayne Circuit Court
LC No. 22-104132-PH

Before: K. F. KELLY, P.J., and MURRAY and SWARTZLE, JJ.

K. F. KELLY, P.J.

In this case, we are asked to decide whether a trial court complies with the statutory requirements of MCL 600.2950a when denying a petition for an ex parte personal protection order (PPO) in a nondomestic relationship by merely concluding that the allegations are "insufficient" for ex parte relief. We find that it does not. Moreover, because it failed to state the specific reasons to either refuse or issue the PPO, we are unable to determine whether the trial court properly exercised its discretion when denying the petition; MCL 600.2950a(7) requires the court to "state in writing the specific reasons for issuing or refusing to issue the personal protection order." Therefore, we vacate the trial court's order and remand this case to the trial court for compliance with the requirements of MCL 600.2950a(7); in particular, for the trial court to state in writing the specific reasons for denying, or in the alternative, granting the petition.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Because the trial court denied the petition without holding a hearing[1], we are constrained to accept the factual allegations, as well as the documentary evidence, petitioner included with the petition. As alleged, the conflict between the parties stems from tension over petitioner's role as an animal foster parent of a dog given to her by Michigan Animal Crew (MAC), an organization

---

[1] See MCL 600.2950a(1) (requiring the trial court to determine whether the petition "alleges facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code . . . .").

over which respondent appears to have some level of control or ownership. The parties first contacted each other on May 1, 2021, after respondent responded to a post made by petitioner on MAC's Facebook page. According to petitioner, respondent asked petitioner to call her and the parties discussed fostering a "puggle mix." During the conversation, respondent also "made a point of telling [petitioner] she had her law degree and mentioned she was able to sue people and had."

Petitioner claimed that when she arrived to meet the new dog, it was not the puggle mix she was expecting, but instead was "Joy," a three-legged Staffordshire Pitbull mix. Regardless of the apparent miscommunication, petitioner took Joy, as well as toys, food, and expired antidiarrhea medication. About a month later, petitioner declined respondent's request to foster another dog named "Gus." According to petitioner, she declined the request because she did not think Gus would be a good fit in her home and would put her over the legal number of allowed animals. But after she informed respondent of her decision, respondent "became enraged" and told petitioner she was going to take back Joy.

In June 2021, petitioner took Joy to the veterinarian to be spayed. While at the clinic, petitioner learned that Joy needed $444 in extra medical care because of the amputation to the leg and a previous opioid overdose. Petitioner paid for the care and, when she informed respondent of the expense, respondent "went berserk" and told petitioner she "wanted more money for Joy."

In August 2021, petitioner claimed she received an anonymous phone call from a female caller who stated petitioner had a "civil court case in Marine City" and then hung up. After petitioner called the court to inquire, the clerk informed her of a civil complaint filed against her by respondent regarding ownership of Joy. When petitioner appeared on September 13, 2021, for a hearing regarding the case, petitioner alleged respondent sat in the row directly in front of her and said, "I am going to ruin and destroy you." After the hearing, petitioner returned to her house, at which point she alleged:

> Suddenly we saw [respondent] driving very slowly up and down my street at least 6 or 7 times. She was screaming out the window "I'm going to ruin you and destroy you[.]" She was always waving her arm around and was filming us. We were all in utter shock and total disbelief. My neighbor . . . yelled at her to leave and that it was private property.

Petitioner called the police to report the incident, and an officer came and took statements from the parties, although petitioner claimed the officer incorrectly noted in the report that she did not want to pursue charges for harassment. The officer's report noted respondent's side of the incident, stating said respondent went to petitioner's residence to "verify the dog was there and to get photos of it . . . ." Respondent told the officer "she had no reason to go back and is not going to contact [petitioner] further."

In October 2021, petitioner alleged that her neighbor's 10-year-old child approached her "terrified and shaking" and said she had photographs of respondent in petitioner's driveway depicting respondent filming her house. Petitioner attached to her petition photographs purporting to be those taken by the neighbor's child and which show various shots of a woman in a car holding a cellular telephone in a manner consistent with someone using the phone to film. The neighbor

provided a signed statement corroborating petitioner's story about the photographs, which petitioner also included with her petition.

Petitioner also alleged that respondent subsequently began appearing at her house frequently. Petitioner took photographs of a woman who she claimed was respondent doing this, which she also attached to her petition. Petitioner alleged respondent: "would stop in the park across the street sometimes for hours. She would park down the street. She would drive by and take pictures. One time she parked in the driveway of my neighbor and was taking pictures." According to petitioner, on March 1, 2022, respondent and another individual also threw eggs at petitioner's house after respondent complained to petitioner's attorney that petitioner "called animal control on her." Ultimately, petitioner alleged that respondent's conduct caused her to suffer from anxiety for which her doctor was treating her with medication.

On April 6, 2022, petitioner filed her petition for nondomestic PPO with the trial court. On April 7, 2022, in a one-page order, the trial court denied petitioner's petition without a hearing stating only: "Insufficient allegations for ex parte relief." This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's decision whether to issue a PPO for an abuse of discretion. *In re JCB*, 336 Mich App 736, 745; 971 NW2d 705 (2021). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Id*. (quotation marks and citation omitted). The trial court necessarily abuses its discretion when it misapprehends or misapplies the law. *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016). The proper interpretation of statutes and court rules are questions of law reviewed de novo. *Lamkin v Engram*, 295 Mich App 701, 707; 815 NW2d 793 (2012).

## III. ANALYSIS

Petitioner claims that the trial court abused its discretion when it denied petitioner's petition for nondomestic PPO because the facts as alleged, and the evidence supporting those allegations, supported granting the PPO. Perhaps they do, but we do not reach that question today. Instead, we are faced with the question of whether the trial court's conclusory determination that the allegations are "insufficient" for ex parte relief is adequate for appellate review. The answer to that question is simple: it is not.

Petitioner filed a petition for a nondomestic PPO pursuant to MCL 600.2950a, which requires the petitioner to allege "facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code, 1931 PA 328, MCL 750.411h, 750.411i, and 750.411s, for the alleged violation." MCL 600.2950a(1). "Stalking" is defined as "a willful *course of conduct* involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411h(1)(d) (emphasis added). "Course of conduct," in turn, is defined as "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411h(1)(a).

"Harassment" is defined in pertinent part as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing *unconsented contact* that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411h(1)(c) (emphasis added). "Unconsented contact" is "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." MCL 750.411h(1)(e). "Unconsented contact" includes, but is not limited to, any of the following:

>    (*i*) Following or appearing within the sight of that individual.

>    (*ii*) Approaching or confronting that individual in a public place or on private property.

>    (*iii*) Appearing at that individual's workplace or residence,

>    (*iv*) Entering onto or remaining on property owned, leased, or occupied by that individual.

>    (*v*) Contacting that individual by telephone.

>    (*vi*) Sending mail or electronic communications to that individual.

>    (*vii*) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual. [MCL 750.411h(1)(e).]

Under MCL 600.2950a(1), petitioner must demonstrate that respondent engaged in behavior that constituted "stalking." In order for a victim to show that stalking has occurred, "[t]here must be evidence of two or more acts of unconsented contact that caused the victim to suffer emotional distress and that would cause a reasonable person to suffer emotional distress." *Hayford v Hayford*, 279 Mich App 324, 330; 760 NW2d 503 (2008). "Emotional distress" is defined as "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." MCL 750.411h(1)(b). MCR 3.703(G) states:

>    If the petition requests an ex parte order, the petition must set forth specific facts showing that immediate and irreparable injury, loss, or damage will result to the petitioner from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued.

Under MCL 600.2950a(7), "[i]f a court issues or refuses to issue a personal protection order, the court shall immediately state in writing the specific reasons for issuing or refusing to issue the personal protection order." Likewise, MCR 3.705(A)(5) requires that if the trial court denies the petition, "it shall state the reasons in writing . . . ."

The trial court did not hold a hearing on petitioner's request for nondomestic PPO and issued an order denying the request for relief because the allegations were "insufficient" because they did not "meet the statutory threshold or requirements." Without *any* findings of fact or *any* conclusions of law based on those facts from the trial court, we are unable to discern which

threshold or requirement petitioner failed to satisfy. The statute requires the trial court to state the "specific reasons" for denying the petition, MCL 600.2950a(7), and an explanation more detailed than simply "insufficient" is needed to satisfy the statute and aid appellate review. As explained above, petitioner was required to show she was the victim of stalking or harassment, which itself required showing that petitioner was subject to "unconsented contact" on two or more occasions leading to "emotional distress." From our review of the record, petitioner alleged, and supported with documentary evidence, that she was subjected to multiple instances of unconsented contact between August 2021 and April 2022. The allegations of unconsented contact were coupled with allegations and evidence of threats made by respondent that she would take Joy away from petitioner and that she would "ruin" and "destroy" petitioner.

However, we do note that "[a] trial court's error is harmless if, based on review of the entire record, it is more probable than not that the error was not outcome determinative; if the probability runs in the other direction, then it is reversible error." *Nahshal v Fremont Ins Co*, 324 Mich App 696, 717; 922 NW2d 662 (2018). In this case, there was no hearing and no written reasons were stated in the order. Because the trial court failed to state its specific reasons for refusing to issue the PPO, we have no evidence that the "trial court was aware of the issues in the case and correctly applied the law." *In re JCB*, 336 Mich App at 753. "[A]ppellate review would . . . be facilitated by requiring further explanation." *Id*. In this case, the one-sentence order from the trial court that the allegations were "insufficient" is not adequate for appellate review. Therefore, we vacate the trial court's order and remand this case to the trial court for compliance with MCL 600.2950a(7) and MCR 3.705(A)(5).[2]

Vacated and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray
/s/ Brock A. Swartzle

---

[2] Petitioner also argues on appeal that the trial court judge was biased against her. In order to preserve a claim of bias or prejudice by the trial court for appeal, a party must pursue a claim for disqualification before the trial court, which petitioner did not do. See MCR 2.003(C)(1)(a). The argument is, therefore, unpreserved. Moreover, judges are presumed unbiased and the party asserting bias has "the heavy burden of overcoming the presumption." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). Petitioner's allegation that the trial court judge was biased is premised merely on the fact that the court denied her motion for a PPO. There is no evidence to support or even address petitioner's allegation of bias. Therefore, petitioner has failed to establish plain error affecting her substantial rights. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).