*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DFM.

---

AMM,

        Petitioner-Appellee,

v

DFM,

        Respondent-Appellant.

UNPUBLISHED
April 20, 2023

No. 361778
Delta Circuit Court
Family Division
LC No. 22-003114-PP

---

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

Respondent appeals as of right his conviction of criminal contempt of court, MCL 600.1715(1), for which he was sentenced to serve 10 days in jail. He also appeals as of right the trial court's order denying his motion to terminate a domestic personal protection order (PPO) issued ex parte at the request of petitioner AMM, respondent's wife. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In March 2022, petitioner sought an ex parte PPO under MCL 600.2950 (domestic relationship). She alleged that petitioner and respondent were married but their divorce action was pending and they no longer lived in the same home. They shared a minor child together, but petitioner had full legal custody of the child. Despite the pending divorce and a prior PPO, petitioner contended that respondent continued to contact her and her children[1] by sending them text messages, calling them, and uploading photographs of himself holding weapons to petitioner's family share site. Petitioner further alleged that respondent's behavior was unstable and manic due to his untreated mental illness, that respondent's family informed her that he was "out of control" and going to hurt himself and others, and that respondent still believed that he, petitioner,

---

[1] Petitioner has two children, but respondent is only the father of petitioner's youngest child.

and the children were a family. In a statement accompanying the petition, she expressed her concern that respondent would harm her and her children because of his unstable mental state, and she felt that neither she nor her children were safe around respondent.

On the basis of those allegations, the court granted the petition and issued an ex parte domestic PPO against respondent. The PPO prohibited respondent from (1) entering onto the property where petitioner lived, (2) assaulting her or her children, (3) stalking behavior as defined by MCL 750.411h and MCL 750.411i, (4) removing the minor children from her custody, (5) threatening to injure or kill her or her children, (6) interfering with her at her place of employment, (7) having access to records concerning her children, (8) intentionally causing her distress or exerting control over her, and (9) purchasing a firearm. Respondent then filed a motion to terminate the ex parte PPO, asserting that petitioner had not met the statutory requirements for the PPO. He also denied all the allegations contained in the petition.

At the hearing to address respondent's motion, petitioner testified in detail about the events leading up to her filing the petition for a PPO. Petitioner testified that while respondent had never physically abused her, he threatened to physically harm her and her children several times, to burn her house down with her inside of it, and to hire another individual to assault her eldest child for disrespecting him. She also averred that respondent frequently threw objects at her, punched things next to her, and destroyed much of her real and personal property, including walls, windows, doors, and various electronics. Respondent's violent behavior caused petitioner to call the police on several occasions. Petitioner also testified that the trial court had issued a PPO against respondent the previous year for similar behavior, and he violated that PPO by messaging and calling her and her children on several occasions. Petitioner stated that she did not feel safe around respondent and that she did not believe her children were safe around respondent. She opined that respondent was fully capable of driving to her home to harass or harm her or her children.

Respondent appeared *in propria persona* by video conference. He personally cross-examined petitioner, and he repeatedly asked improper questions and used the questions to testify about his version of events. Despite the trial court's repeated instructions on how to ask proper questions and reminders that he would have a chance to testify, respondent refused to comply. Respondent then continually interrupted the trial court every time it attempted to address him. The trial court held respondent in criminal contempt of court for disrupting the administration of justice. Respondent continued to interrupt the court as it sentenced him and read him his appellate rights, and he voluntarily left the hearing during redirect examination. The court then made its findings in relation to respondent's motion and found petitioner to be a credible witness, and it concluded that the statutory requirements for a domestic PPO had been satisfied. The trial court ordered that respondent serve 10 days in jail for criminal contempt, and it denied his motion to terminate the ex parte PPO. This appeal followed.

## II. ANALYSIS

### A. CRIMINAL CONTEMPT OF COURT

First, respondent submits that the trial court abused its discretion by finding him in criminal contempt of court. Specifically, respondent argues that the trial court clearly erred by finding him in criminal contempt because he did not engage in willful acts of disorderly, contemptuous,

disrespectful, or insolent behavior. We disagree.

"The issuance of an order of contempt rests in the sound discretion of the trial court and is reviewed only for an abuse of discretion." *In re Contempt of Henry*, 282 Mich App 656, 671; 765 NW2d 44 (2009). A trial court has not abused its discretion when its decision is within the range of principled outcomes. *Id*. This Court reviews a trial court's factual findings in a criminal contempt proceeding for clear error and must affirm its findings "if there is competent evidence to support them." *Id*. at 668. This Court "may not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings." *Id*.

"Contempt of court is a willful act, omission, or statement that tends to impair the authority or impede the functioning of a court." *In re Contempt of Murphy*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360560); slip op at 1 (quotation marks and citation omitted). A court has inherent and statutory authority to punish a person for contempt of court. See MCL 600.1701 *et seq*.; *In re Moroun*, 295 Mich App 312, 331; 814 NW2d 319 (2012). Courts of record "have power to punish by fine or imprisonment, or both, persons" who engage in "[d]isorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority." MCL 600.1701(a). "When any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both." MCL 600.1711(1). "This is called 'direct contempt,' " and this Court has explained that it does not require " 'a separate hearing before the court imposes any proper sanctions because all facts necessary to a finding of contempt are within the personal knowledge of the judge.' " *Murphy*, ___ Mich App at ___; slip op at 2 (citation omitted).

In this case, the trial court found that respondent "tremendously" disrupted the court proceedings by intentionally asking inappropriate questions and interrupting the court despite being repeatedly instructed on how to ask proper questions and the directive that he must follow the court's rules. The court also found that respondent disregarded all of its instructions meant to ensure the hearing was held in an orderly fashion and had a "complete disregard for the proper procedure and decorum in a courtroom." The court found that respondent's continually disruptive behavior heavily interfered with its ability to maintain a proper record. There is an ample amount of "competent evidence" in the record to support the trial court's factual findings. See *Henry*, 282 Mich App at 668. Respondent repeatedly asked petitioner improper questions during cross-examination despite the trial court's repeated instructions on how to ask proper questions and reminders that he would have a chance to testify. Respondent continually interrupted the court as it explained the court rules, sentenced him for contempt, and read him his appellate rights. We are not definitely and firmly convinced that the trial court made a mistake by finding that respondent's conduct at the hearing constituted criminal contempt, and we conclude that the trial court did not abuse its discretion by issuing an order of criminal contempt because its decision was within the range of principled outcomes. See *id*. at 671.

## B. ISSUANCE AND CONTINUATION OF PPO

Respondent alleges that the trial court abused its discretion by issuing the ex parte PPO because petitioner failed to satisfy the statutory requirements. Further, he contends that the trial court abused its discretion by denying his motion to terminate the ex parte PPO. We disagree.

This Court reviews a grant or denial of a PPO for an abuse of discretion, and we review the trial court's factual findings for clear error. *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008). MCL 600.2950(1) provides, in relevant part:

[B]y filing a motion in an action in which the petitioner and the individual to be restrained or enjoined are parties, an individual may petition the family division of circuit court to enter a personal protection order to restrain or enjoin a spouse, a former spouse, an individual with whom he or she has had a child in common . . . , or an individual residing or having resided in the same household as the petitioner from doing 1 or more of the following:

(a) Entering onto premises.

(b) Assaulting, attacking, beating, molesting, or wounding a named individual.

(c) Threatening to kill or physically injure a named individual.

(d) Removing minor children from the individual having legal custody of the children, except as otherwise authorized by a custody or parenting time order issued by a court of competent jurisdiction.

(e) Purchasing or possessing a firearm.

\* \* \*

(g) Interfering with petitioner at petitioner's place of employment or education or engaging in conduct that impairs petitioner's employment or educational relationship or environment.

\* \* \*

(i) Having access to information in records concerning a minor child of both petitioner and respondent that will inform respondent about the address or telephone number of petitioner and petitioner's minor child or about petitioner's employment address.

(j) Engaging in conduct that is prohibited under [MCL 750.411h or MCL 750.411i].

Under MCL 600.2950(4), the trial court shall issue a PPO if it determines that "there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in subsection (1)." In determining whether reasonable cause exists, the trial court must consider the proffered testimony, documents, and other evidence and whether the respondent had previously committed or threatened to commit any of the acts listed under MCL 600.2950(1). MCL 600.2950(4). "[A] petitioner bears the burden of proof when seeking to obtain an ex parte PPO." *Pickering v Pickering*, 253 Mich App 694, 697; 659 NW2d 649 (2002). That burden continues when the respondent seeks to terminate an ex parte PPO. *Id*. at 697-698.

The acts listed in MCL 600.2950(1) include engaging in conduct that constitutes stalking as defined by MCL 750.411h. " 'Stalking' means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411h(1)(d). " 'Course of conduct' means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411h(1)(a). " 'Harassment' means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose." MCL 750.411h(1)(c). " 'Unconsented contact' means any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." MCL 750.411h(1)(e). An example of unconsented contact includes sending electronic communications to the protected person. MCL 750.411h(1)(e)(*vi*).

Contrary to respondent's argument, there was testimony presented at the evidentiary hearing demonstrating reasonable cause to believe that respondent engaged in conduct that constituted stalking. MCL 600.2950(1)(j). Petitioner testified that respondent threatened to physically harm her and her children multiple times, to burn her house down with her inside of it, and to hire another individual to assault her eldest child for disrespecting him. Petitioner testified that respondent repeatedly threw objects at her and punched things near her. Petitioner testified that respondent destroyed property, including walls, windows, doors, and various electronics, and she had called the police three or four times as a result. The trial court had issued an ex parte PPO against respondent a year prior for similar behavior, and respondent violated that PPO by messaging or calling petitioner on several occasions. Petitioner read into the record multiple text messages that respondent sent her while the previous PPO was active, described the voice messages that respondent left her, and described messages that respondent sent to her and her daughter threatening to hire an individual to assault petitioner's daughter. Petitioner stated that she felt that neither she nor her children were safe around respondent. The trial court expressly found the petitioner's testimony, which mirrored the allegations contained in her petition, to be credible and that petitioner had satisfied the statutory requirements for a domestic PPO. We defer to the trial court's determination of credibility. *Pickering*, 253 Mich App at 702. Under these circumstances, we are unable to conclude that the trial court abused its discretion by issuing the ex parte PPO or by denying respondent's motion to terminate the PPO.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Anica Letica