*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SMG,

        Petitioner-Appellee,

v

GG,

        Respondent-Appellant.

UNPUBLISHED
August 10, 2023

No. 363439
Kalamazoo Circuit Court
LC No. 2022-008859-PH

Before: YATES, P.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

In August 2022, petitioner, SMG, obtained an ex parte personal protection order (PPO) against her father, respondent, GG. Respondent moved to terminate the PPO, but that motion was denied. Respondent now appeals as of right the denial of his motion to terminate the PPO. We find that there was insufficient evidence to support the PPO and thus the trial court abused its discretion by refusing to terminate the PPO. We reverse the trial court order, vacate the PPO, and remand with an instruction that the "PPO should be updated in LEIN[1] as rescinded . . . ." *TM v MZ*, 501 Mich 312, 320; 916 NW2d 473 (2018).

## I. BACKGROUND

Petitioner is respondent's adult daughter. On May 5, 2022, petitioner filed a request for a PPO against respondent.[2] Petitioner alleged that, nearly one year prior, in June 2021, petitioner, petitioner's spouse, respondent, and petitioner's mother all met with a pastor and allegedly agreed that petitioner's parents would not contact petitioner via text message or attend petitioner's softball games without approval. Despite the agreement, petitioner maintained that respondent attended softball games and sent "relentless" early morning text messages articulating that petitioner and petitioner's spouse were awful people. Petitioner asserted that respondent went into a "blind rage"

---

[1] " 'LEIN' means the law enforcement information network regulated under the L.E.I.N. policy council act of 1974, 1974 PA 163, MCL 28.211 to 28.216." MCL 600.2950h(b).

[2] This earlier request was made in Kalamazoo Circuit Court Case No. 2022-8677-PH.

on December 26, 2021, because petitioner failed to respond to a text. Petitioner claimed that respondent physically assaulted petitioner and threatened petitioner's spouse. Petitioner further maintained that respondent sent text messages on December 27, 2021, and December 28, 2021, accusing petitioner's spouse of manipulation and blaming petitioner's spouse for provoking respondent. Petitioner allegedly instructed respondent to refrain from contacting petitioner until respondent obtained "professional licensed therapy," which petitioner reiterated when respondent sent an e-mail to petitioner on February 28, 2022. Following a hearing, the court determined that the parties should engage in some form of alternative dispute resolution and declined to enter a PPO.

Thereafter, on August 26, 2022, petitioner petitioned the court for an ex parte PPO under MCL 600.2950a(1). In her petition, she alleged that the trial court had encouraged the parties to work through their issues when they appeared for the June 9, 2022 hearing in the prior matter. Petitioner claimed that she sent her parents a letter on June 9, 2022, "with information and recommendations . . . of a license [sic] professional therapist that shared their value system Christian and from an institution [petitioner] personally trust[ed] and . . . used." Two weeks later, on June 25, 2022, petitioner contacted her mother to advise that she would be dropping off a book that she "hoped would facilitate healing." Petitioner alleged that respondent sent an e-mail on August 25, 2022, that contained a clip of a June 2021 conversation wherein petitioner welcomed her parents to her softball games. Petitioner's spouse then initiated a phone call to respondent and invited respondent to their home to discuss the matter further. Respondent allegedly sent two additional e-mails that day and another e-mail the following day. Petitioner did not attach any of the communications to the PPO request, but alleged that the August 26, 2022 e-mail accused her of "lying under oath" and threatened to provide the information to the court, her employer, friends, and family. Petitioner requested that the PPO be granted ex parte because she "consulted a licensed behavior analyist [sic]" who "concluded this is dangerous behavior."

The trial court entered an ex parte PPO on August 26, 2022, prohibiting respondent from taking actions against petitioner that included, "stalking as defined under MCL 750.411h and MCL 750.411i" and "posting a message through the use of any medium of communication . . . pursuant to MCL 750.411s." The court notified the Kalamazoo County Sheriff Department of the PPO on August 29, 2022, and instructed that it be entered in the L.E.I.N.

On September 8, 2022, respondent moved to terminate the PPO, arguing that petitioner set forth "numerous falsehoods and misstatements" and failed to "meet the legal criteria" for a PPO. On September 26, 2022, respondent supplemented his motion and made an offer of proof with copies of a June 9, 2022 unsolicited e-mail from petitioner to respondent regarding counseling, a picture of the jacket of a book that petitioner placed in respondent's mailbox on June 26, 2022, an unsolicited 9-page letter from petitioner's husband that was postmarked July 23, 2022, and sent to respondent, as well as petitioner's sister, and the August 25, 2022 e-mail exchange between petitioner and respondent. Respondent argued that there were no threats of harm. He further maintained that petitioner had contacted respondent unsolicited and was "attempting to force a doctrine or impose her will on to the Respondent and his wife that conflicts with their belief system."

Respondent was the only witness that testified at the motion hearing. The court denied the motion and ordered that the PPO would expire on the date of the last order. This appeal followed.[3]

## II. ANALYSIS

Respondent argues that there was insufficient evidence to support the PPO and thus the trial court abused its discretion by denying his motion to terminate the PPO. We agree.

### A. STANDARD OF REVIEW

We review a trial court's decision regarding whether to grant and continue a PPO for an abuse of discretion. *Pickering v Pickering*, 253 Mich App 694, 700; 659 NW2d 649 (2002). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008). A court necessarily abuses its discretion when it makes an error of law. *TM v MZ (On Remand)*, 326 Mich App 227, 235-236; 926 NW2d 900 (2018). The trial court's factual findings are reviewed for clear error. *Hayford*, 279 Mich App at 325. "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). We review underlying issues of statutory interpretation de novo. *Drob v SEK 15, Inc*, 334 Mich App 607, 617; 965 NW2d 683 (2020).

### B. APPLICABLE LAW

Petitioner sought a PPO pursuant to MCL 600.2950a(1), which allows for "an independent action to obtain . . . a [PPO] to restrain or enjoin an individual from engaging in conduct that is prohibited under . . . MCL 750.411h, 750.441i, and 750.411s." The petition must "allege[ ] facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code . . . ." MCL 600.2950a(1). "The petitioner bears the burden of establishing reasonable cause for issuance of a PPO and of establishing a justification for the continuance of a PPO at a hearing on the respondent's motion to terminate the PPO." *Hayford*, 279 Mich App at 326 (citations omitted). "The trial court must consider the testimony, documents, and other evidence proffered and whether the respondent had previously engaged in the listed acts." *Id*. Further, the issuance or continuance of a PPO requires "evidence of two or

---

[3] Although the PPO expired during the pendency of this appeal, we find that the issue is not moot because "identifying an improperly issued PPO as rescinded is a live controversy and thus not moot." *TM*, 501 Mich at 319. This is because "[a] judgment here can have a 'practical legal effect' under *Anway* [v *Grand Rapids R Co*, 211 Mich 592; 179 NW 350 (1920),] because if the Court concludes that the trial court should never have issued the PPO, respondent would be entitled to have LEIN reflect that fact." *Id*. "Thus, an appeal challenging a PPO, with an eye toward determining whether a PPO should be updated in LEIN as rescinded, need not fall within an exception to the mootness doctrine to warrant appellate review; instead, such a dispute is simply not moot." *Id*. at 319-320.

more acts of unconsented contact that caused the victim to suffer emotional distress and that would cause a reasonable person to suffer emotional distress." *Id.* at 330.

"Stalking" is defined as a "willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411h(1)(d). A "course of conduct" is "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411h(1)(a). "Harassment" is defined as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411h(1)(c). And "unconsented contact" is defined as "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." MCL 750.411h(e). Finally, "emotional distress" is defined as "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." MCL 750.411h(1)(b)

## C. SUFFICIENCY OF THE EVIDENCE

It is undisputed that petitioner sent an unsolicited e-mail to respondent and his wife on June 9, 2022. It is further undisputed that respondent did not take any action in response to the e-mail. Nor did respondent contact petitioner after she placed a book in his mailbox two weeks later. But, after receiving an unsolicited letter from petitioner's husband, respondent admitted that he sent an unsolicited e-mail to petitioner on August 25, 2022, because he "felt like . . . that letter was full of lies and hate" and he wanted to prove to petitioner that she had invited respondent and his wife to her softball games, as opposed to instructing them not to attend as she testified in the prior matter. It is further undisputed that petitioner's husband called respondent on August 25, 2022, after respondent sent the e-mail, and invited respondent to petitioner's home to discuss their issues. Respondent admitted that he sent a second e-mail after the phone call from petitioner's husband. But rather than ignore respondent, the evidence reflects that petitioner sent an e-mail to respondent demanding that he attend counseling with a licensed professional. Thereafter, respondent sent two additional e-mails, including one that asked whether petitioner was bothered by lying under oath and asked, hypothetically, whether respondent should send a recorded conversation to the court, petitioner's boss, or family members.

On cross-examination, the pro se petitioner asked respondent, "Why don't you want to go to counseling to restore our relationship, a third party. That means I would be there too." Respondent maintained that he and his wife attended counseling at their church and had done everything that petitioner had requested, but believed that petitioner continuously modified the parameters that respondent was expected to meet. For example, petitioner's spouse allegedly demanded that respondent and his wife complete 100 hours of counseling and admit that everything was their fault. Respondent testified that he had "no intentions" of complying with that demand. Respondent asserted that petitioner's spouse, a non-party to this action, was the one preventing a relationship with petitioner.

Petitioner did not call any witnesses. She argued that she provided resources to respondent and her mother, but felt that "they've taken no actions to try to bring healing to the relationship." She maintained that she did not want contact with her parents if they were not motivated to meet her demands. Petitioner claimed that she felt unsafe, but acknowledged that she "would be open to communications" with a third party.

The trial court found that, despite its previous recommendation, the parties were not able to successfully conduct any form of alternative dispute resolution because they could not come to an agreement as to the appropriate mechanism. The court recognized that petitioner's husband engaged in unwelcome, threatening, harassing, and intimidating behavior towards respondent. But the court declined to impute the non-party's actions to petitioner. Notably, the court did not make any findings that the respondent engaged in unwelcome, threatening, harassing, or intimidating behavior. Nor did the court make any findings that petitioner suffered emotional distress. Ultimately, the court determined that there was an impasse between the parties as to how to repair their relationship, which required the parties to be separate. The court concluded that the PPO should be continued through its expiration.

The trial court abused its discretion by refusing to terminate the PPO. The evidence reflects that petitioner initiated contact with respondent twice in June, but respondent did not respond in any manner. While the testimony reflects that respondent contacted petitioner via e-mail after receiving an unsolicited letter from petitioner's husband, the e-mail was insufficient to constitute "stalking" as defined under MCL 750.411h and MCL 750.411i. In fact, after petitioner received the e-mail, her husband called respondent and invited him to petitioner's home. Following the telephone conversation, respondent sent another e-mail to petitioner. But the trial court did not make any factual findings that respondent's conduct constituted stalking. And it is undisputed that respondent did not post "a message through the use of any medium of communication . . . pursuant to MCL 750.411s." Because there was insufficient evidence that respondent's conduct constituted stalking, we find that the trial court's refusal to terminate the PPO fell outside the range of reasonable and principled outcomes.

We reverse the trial court order, vacate the PPO, and remand with an instruction that the "PPO should be updated in LEIN as rescinded . . . ." *TM*, 501 Mich at 320. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Stephen L. Borrello
/s/ Sima G. Patel